257 N.J. Super. 56 (1992)
607 A.2d 1339
ROBERT A. VORT, PLAINTIFF-RESPONDENT,
v.
MYRON HOLLANDER AND CECEILE HOLLANDER, DEFENDANTS-APPELLANTS. DENNIS ALAN CIPRIANO, PLAINTIFF-INTERVENOR,
v.
MYRON HOLLANDER, CECEILE HOLLANDER AND ROBERT A. VORT, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 19, 1992.
Decided June 9, 1992.
*57 Before Judges PRESSLER, SHEBELL and SKILLMAN.
Charles J. Mysak, attorney for appellants.
Voorhees & Acciavatti, attorneys for respondent (Robert W. McAndrew, of counsel; Peter A. Ouda, on the brief).
Dennis Alan Cipriano, intervenor, pro se, filed a statement in lieu of brief.
The opinion of the court was delivered by SHEBELL, J.A.D.
Defendants, Myron Hollander and Ceceile Hollander, appeal the Law Division's dismissal on summary judgment of their counterclaims against their former attorney, Robert A. Vort.[1] We affirm.
The Hollanders purchased a townhouse in Wayne on March 22, 1979. A homeowner's association governed the townhouses through by-laws. In 1981, the Hollanders sued the developer and the association's architectural committee to compel specific performance of an alleged oral agreement to build a deck on the rear of their townhouse. A trial was held on March 30, 1982, in the Chancery Division. The judge dismissed the Hollanders' claim against the developer but ordered that the architectural committee conduct a hearing.
*58 After a hearing on April 20, 1982, defendants' application for a deck was denied and they were ordered to remove a patio they had constructed in violation of the by-laws. The Hollanders promptly commenced another action asserting that the ruling of the architectural committee constituted an abuse of discretion. On August 19, 1982, the court ordered the Hollanders to remove certain improvements which they had installed, specifically the patio, gas barbecue grill, and certain shrubs. The defendants unsuccessfully appealed this judgment.
In September, 1984, Myron Hollander consulted an attorney about the various claims and litigation that he had against the association. The attorney recommended that Hollander consult with Robert Vort, Esq. Vort and Myron Hollander met, and after reviewing the matters, Vort agreed to represent the Hollanders.
It is not disputed that Vort agreed to charge the Hollanders $50 per hour, plus 20% of any compensatory damages, and one-third of any punitive damage award. However, defendants claim that they had an oral agreement that there would be a $15,000 cap on billed legal fees. They contend they never signed the retainer agreement Vort sent them because he failed to include the provision about the cap. Nonetheless, Vort filed a lengthy civil complaint against the association. Defendants claim that when the fees began to reach the cap level, they sought reassurance from Vort about the cap, and were assured that Vort was continuing to bill only for the purpose of recovering attorney's fees from the association.
In April, 1986, Vort asked to be released from representing the Hollanders, claiming health problems. He requested that Dennis Cipriano, Esq., take over the case. The Hollanders and Cipriano agreed to the same arrangement that Vort had with the Hollanders; however, no one mentioned a cap to Cipriano and no retainer agreement was prepared.
In October, 1987, a meeting was held at Cipriano's office. Cipriano and an attorney representing the Hollanders on another *59 matter, as well as Vort, one of Cipriano's associates, and Myron Hollander met to discuss legal strategies. At the conclusion of the meeting, Cipriano mentioned his unpaid legal fees. Hollander told him to get the money from Vort because there was a cap on the legal fees. Vort denied there was a cap. Cipriano then forwarded a letter to Hollander and Vort requesting resolution of the fee dispute, expressing his willingness to submit the issue to a fee arbitration committee. Thereafter, in a letter dated May 25, 1988, Cipriano notified Hollander that he was terminating representation.
It appears while Cipriano was still representing the Hollanders, Vort appeared for Cipriano in response to the association's motion for summary judgment, and that summary judgment was granted as to substantially all of the claims that the Hollanders were asserting. On the day trial was scheduled on the association's counterclaim, Cipriano did not appear, and default was entered. However, the association was unable to prove its case, and the counterclaim was dismissed.
On February 16, 1988, Vort filed a complaint against the Hollanders for legal fees he alleged the Hollanders owed in the sum of $28,691.38. The Hollanders responded that they had a verbal agreement with plaintiff which established legal fees at $50 per hour, but with a cap of $15,000 as to the hourly rate portion of the fee. They claimed that Vort had been fully paid.
The Hollanders counterclaimed asserting violations of the Consumer Fraud Act; that Vort billed them for services he never rendered and for services performed after he had resigned as their attorney; that because of plaintiff's failure to provide agreed legal services they had to retain other counsel at greater expense; and they alleged legal malpractice against Vort. Cipriano, by leave of court, filed an intervenor complaint alleging that he was owed a total of $13,810.54 for legal services rendered to the Hollanders.
On or about January 18, 1990 the Law Division judge entered an order limiting to fifteen days the time in which Hollanders *60 would be permitted to produce names and reports of any legal malpractice experts. When the Hollanders failed to comply, Vort moved for summary judgment. He argued that without experts the Hollanders could not sustain their burden of proving malpractice.
On March 16, 1990, oral argument on Vort's motion for summary judgment as to the counterclaim was heard. The Hollanders argued that the conduct of their former attorney was malpractice per se, and did not require the production of experts. They also argued that the claims for breach of contract and consumer fraud did not require expert testimony. Vort maintained that the issues in defendants' counterclaim were beyond the ken of ordinary lay persons and that the Consumer Fraud Act does not apply to legal services. After oral argument, the judge granted summary judgment dismissing the entire counterclaim. An order was signed March 19, 1990. The Hollanders motion for reconsideration of the summary judgment order was denied on April 27, 1990.
Vort's and Cipriano's claims went to trial before a jury in January, 1991. The jury found in favor of Vort and Cipriano. Judgment was entered in favor of Vort for $11,024 and in favor of Cipriano for $15,685. The Hollanders appeal arguing only that the motion judge erred in dismissing their counterclaims on summary judgment. They make no arguments with respect to the jury verdict.
In granting Vort's motion for summary judgment on Hollanders' counterclaim, the Law Division judge concluded:
I'm satisfied with respect to the legal malpractice aspects, the fraud aspects, the so called contract aspects, all deal with a lawyers performance. I'm satisfied that in order to make a claim and to present a claim to a jury that must be done through the use of professional testimony, and that's the only way you can get in the standards require [sic] to have a lawyer in this kind of case. I signed an order back on January 22 which compelled Hollander to file expert reports. He has not done so. Therefore, defendant Vort's motion for summary judgment on the counterclaim is granted.
Defendants contend that dismissal of their counterclaim was improper because the alleged malpractice was so blatant and *61 egregious that it is within the ken of the ordinary layperson. See Brizak v. Needle, 239 N.J. Super. 415, 429, 571 A.2d 975 (App. Div.), certif. denied, 122 N.J. 164, 584 A.2d 230 (1990); Annotation, "Admissibility and Necessity of Expert Evidence as to Standards of Practice and Negligence in Malpractice Action Against Attorney," 14 A.L.R. 4th 170 (1982).
Even if defendants' position were to be accepted as valid, expert testimony was nonetheless required to establish that plaintiff's malpractice was the proximate cause of damage to the defendants. Defendants overlook the fact that they could not prevail on their counterclaim without proof that they were damaged by their former attorney's alleged malpractice.
As we have previously held:
Although not a guarantor against errors in judgment, an attorney is required to exercise on his client's behalf the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated and to employ reasonable care and prudence in connection therewith. Where he breaches his duty he is answerable in damages only for losses which are proximately caused by his negligence. The burden of proving the causal relationship rests with the client. The test of proximate cause is satisfied where the negligent conduct is a substantial contributing factor in causing the loss. The burden of proof must be carried by the presentation of competent credible evidence which proves material facts. It cannot be satisfied by conjecture, surmise or suspicion. [Lamb v. Barbour, 188 N.J. Super. 6, 12, 455 A.2d 1122 (App. Div. 1982), certif. denied, 93 N.J. 297, 460 A.2d 693 (1983) (citations omitted) (emphasis added)].
At a hearing during the pendency of the April 3, 1987 action, the motion judge made the following observation as to the Hollanders' litigation that was before him:
Most of what I see in this complaint and all of the pleadings is absolutely nonsense. I granted your right to vote. The Association was wrong on that, but just about everything else in the complaint is nonsense and most of what I saw in the other cases was nonsense. All those cases in the District Court and Chancery Court were nonsense as best as I can tell.
Clearly expert testimony was required in light of this judicial observation as to the merits of appellant's underlying claim.
Defendants' contention that they have a right to establish their entitlement to damages under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -48, is without merit. "The purpose of *62 the [Consumer Fraud] Act was to prevent deception, fraud or falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate." Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 376-77, 371 A.2d 13 (1977). Although the sale of certain services also falls within the purview of the Act, it is clear that attorney's services do not fall within the intendment of the Consumer Fraud Act.
In Neveroski v. Blair, 141 N.J. Super. 365, 358 A.2d 473 (1976), this court concluded that real estate brokers were exempt from the Act, under the following reasoning:
A real estate broker is in a far different category from the purveyors of products or services or other activities. He is in a semi-professional status subject to testing, licensing, regulations and penalties through other legislative provisions. Although not on the same plane as other professionals such as lawyers, physicians, dentists, accountants or engineers, the nature of his activity is recognized as something beyond the ordinary commercial seller of goods or services  an activity beyond the pale of the act under consideration. [Id. at 379, 358 A.2d 473 (citation omitted) (emphasis added)].
In 1975 the Legislature amended the Act to include deceptive practices in connection with the sale of real estate. L. 1975, c. 294, § 1, eff. Jan. 19, 1976. The Legislature, however, has not amended the Act to include professionals generally, despite our longstanding holding in Neveroski. Moreover, the practice of law in the State of New Jersey is in the first instance, if not exclusively, regulated by the New Jersey Supreme Court. N.J. Const. (1947), Art. VI, § II, par. 3; In re Li Volsi, 85 N.J. 576, 583, 428 A.2d 1268 (1981). Had the Legislature intended to enter the area of attorney regulation it surely would have stated with specificity that attorneys were covered under the Consumer Fraud Act.
Although this specific issue has not been the subject of any reported decisions by the courts of this state, courts in other states have ruled that attorney's services are not covered by consumer fraud statutes. See Frahm v. Urkovich, 113 Ill. App.3d 580, 69 Ill.Dec. 572, 576, 447 N.E.2d 1007, 1011 (1983) (The Legislature's use of "trade or commerce" in defining the *63 application of the Act was not meant to include the actual practice of law.); Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc., 779 S.W.2d 474, 479 (Tex. App.  El Paso 1989) ("Professional conduct is not included within the implied warranty provisions of the DPTA [Deceptive Trade Practices  Consumer Protection Act].").
In addition, it is apparent that in sustaining Vort and Cipriano's fee claims against appellants, the jury necessarily had to review and discount the allegations that the legal services were not adequately rendered. We find no error in the grant of summary judgment on the counterclaim.
Affirmed.
NOTES
[1] Appellants' notice of appeal indicated the appeal is taken from an order "entered in this action on February 13, 1990 in favor of Robert Vort and Dennis Alan Cipriano." Vort's motion for summary judgment on the counterclaim was argued on March 16, 1990, and granted by order dated March 19, 1990. Final judgment was entered on February 13, 1991. In any event, appellants in their brief to this court only urge error in the dismissal of their counterclaim.