732 A.2d 555 (1999)
Lawrence BLATTERFEIN, Grace Blatterfein, Peter Bronsteen, Alissa Bronsteen, Thomas Degaglia, Joann Degaglia, Chris Shuster, Barbara Shuster, Nicholas Franzi and Brenda Franzi, Plaintiffs-Respondents,
v.
LARKEN ASSOCIATES, Lawrence W. Gardner, David B. Gardner, Carol L. Gardner, Kenneth Schwartz, Betty Jo Brechka, G.A.F. Corporation, Cool-O-Matic, Inc., Re/Max, Meyer & Depew Company, Arzee Supply Corporation, K & M General Contractors, M.A.K. Construction, KLM Zarillo Brothers Construction, Philips Concrete, Avenel Corporation, Finderne Excavating, Clayton Block, Arthur Mattes, Miron Lumber, J & M Flooring, Vicar Construction, Morris Lumber & Brick, Church Brick Company, Continental Decorators, Coastal Insulation, ATS Insulation, F.M. Rojeck, Matawan Building Supplies, Apollo Window and Door, Skylined Drywall, Munroe Electric, Cobra Plumbing and Heating, Peter Kocubinski, Steve White, Jim McCode, Fernando Bica, John Gregorio, G & P Construction, and Corbett Construction, Defendants,
and
Mark Yarrington, Defendant-Appellant,
and
The Blackstone Company, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1998.
Decided July 15, 1999.
*556 Bradley M. Wilson, for defendant-appellant Yarrington (Sachs, Maitlin, Fleming, Greene, Wilson & Marotte, attorneys; Mr. Wilson and Laura L. Milcsik, on the brief).
Glenn A. Bergenfield, Brunswick, for plaintiffs-respondents Blatterfein, Bronsteen, DeGaglia and Schuster (Mr. Bergenfield, on the brief).
Deborah I. Hollander, Lyndhurst, for plaintiffs-respondents Franzi (Sheak & Korzun, attorneys; Ms. Hollander and J. Charles Sheak, on the brief).
Gerald R. Della Torre, Waren, for defendant-respondent the Blackstone Company (Clemente, Dickson & Mueller, attorneys;
*557 William F. Mueller, of counsel; Mr. Della Torre, on the brief).
No brief was filed by any other party.
Before Judges LONG, KESTIN and WEFING.
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant Mark Yarrington (Yarrington) appeals on leave granted from the trial court's order denying his motion for summary judgment. Defendant The Blackstone Company (Blackstone), nominally a respondent on appeal, whose own motion for leave to appeal was denied as untimely, supports Yarrington's position on issues of common concern. An untimely motion for leave to appeal filed by defendant Larken Associates and its principals (the Larken defendants) was also denied. The Larken defendants have not participated in this appeal.
After we granted Yarrington's motion for leave to appeal, the trial court granted his motion for a stay of all litigation at the trial level. We now affirm the denial of summary judgment and remand for further proceedings.
Plaintiffs are five families who, in 1988 and early 1989, purchased homes in a Montgomery Township development from Larken Associates, a builder/developer, at contract prices ranging from $330,000 to $430,000. Two of the contracts specified a model by name; three specified an area size by square footage, with either "custom" or "architectural" design. Plaintiffs allege that, after taking possession, they discovered serious structural, functional and aesthetic defects in their homes. When repeated requests to correct the problems went unanswered, plaintiffs, in the fall of 1990, sued the Larken defendants; Yarrington, the architect; Blackstone, a manufacturer and installer of windows; other subcontractors and suppliers; and Re/Max Preferred Professionals, the realtor for all of the transactions. The complaint was subsequently amended to add other subcontractors and suppliers. The claims against all defendants alleged breach of warranty, common law fraud, violations of the Consumer Fraud Act (N.J.S.A. 56:8-1 to -91) and the Magnuson-Moss Act of 1975 (Pub.L. No. 93-637, 88 Stat. 2183 (codified as amended in scattered sections of 15 U.S.C.)), and civil RICO (18 U.S.C. § 1964(c) (Supp.1999)) causes of action. Against the Larken defendants alone, plaintiffs alleged breach of contract also.
The Larken defendants moved to stay all proceedings on the basis of an arbitration provision in the plaintiffs' contracts. In March 1991, the trial court granted the motion to stay pending arbitration as to all plaintiffs except the Franzis, presumably because their contract with Larken Associates contained no arbitration clause. Subsequently, in September 1991, the trial court denied the Larken defendants' motion to restrain the plaintiffs from proceeding in a single arbitration, required all the claims to proceed before a single American Arbitration Association panel, and ordered that, in accordance with the parties' recent agreement, the Franzi claims would also be arbitrated in the same proceeding. In an order entered in November 1991, the trial court stayed all proceedings in this matter in respect of all defendants pending the outcome of the arbitration.
Almost six years passed before the arbitration concluded after about one hundred separate hearing days. During its pendency, a request for general discovery was denied by the arbitrators. The award was entered on February 27, 1997. The Larken defendants were ordered to pay the plaintiffs as follows:
Blatterfein  71,100
Bronsteen  60,000
DeGaglia  125,600
Shuster  91,300
Franzi  116,400 *558 The award also allocated the parties' responsibilities for fees and expenses.
Before the award was rendered, the Larken defendants requested that the arbitrators make findings itemizing individual defects and define the scope of the work necessary to repair those defects. Plaintiffs objected on the grounds that the request sought a remedy available under the New Home Warranty and Builder's Registration Act (HOW), N.J.S.A. 46:3B-1 to -12; that their arbitration was contractual, not under HOW auspices; and that plaintiffs were entitled to a monetary award. In their award, the arbitrators expressly denied the Larken defendants'"request that any award against them be in the form of a builder's remedy rather than a monetary award."
Plaintiffs moved before the trial court to confirm the arbitration award against the Larken defendants and to reactivate the civil action so that plaintiffs could proceed to litigate their remaining claims against all defendants. Larken argued, inter alia, that litigation of related claims not embraced in the contractual issues which had been arbitrated was barred by the entire controversy doctrine. On May 19, 1997, the trial court granted the motion to confirm the award and entered judgment against the Larken defendants for the amounts ordered plus $8,519.96 for "fees, expenses and arbitrators' fees." The trial court also denied a motion to vacate the award as to the individual principals of Larken Associates.
Because the scope of the arbitrators' consideration was in question and bore upon the focus of the remaining litigation, the trial court, in another order on the same date, required the arbitrators to indicate whether they had considered any of the plaintiffs' Consumer Fraud Act claims in reaching their decision. The panel responded that it had not. As a result, the trial court considered the consumer fraud claims to be a viable aspect of the civil action with respect to the Larken defendants as well as the other defendants.
As the discovery phase of the civil action proceeded, the Larken defendants subpoenaed the arbitrators, seeking support in the arbitrators' testimony for the Larken defendants' cross-claims against the other defendants. The American Arbitration Association's motion to quash the subpoena was granted. The Larken defendants' motion for leave to appeal that order was denied.
Before discovery could be completed, Yarrington and other defendants, including Blackstone, moved for summary judgment, arguing that the arbitration award, as the product of an election of remedies under HOW, precluded any award for damages against any other defendant. Yarrington also argued that he, as an architect, was immune from liability under the Consumer Fraud Act. Judge Ashrafi denied the summary judgment motions. He concluded that the arbitration was contractual, not conducted pursuant to HOW; and, based upon Konieczny v. Micciche, 305 N.J.Super. 375, 384, 702 A.2d 831 (App.Div.1997), that Yarrington and others, in any event, had no standing to claim immunity from suit by reason of the bar imposed by HOW's election of remedy provision, N.J.S.A. 46:3B-9. Judge Ashrafi did rule, however, that the total arbitration award would serve, by way of collateral estoppel, as a cap on plaintiffs' recovery for compensatory damages on their contract claims against the Larken defendants. This cap would, in turn, limit the liability of the subcontractors and suppliers on the Larken defendants' cross-claims against them. The judge also observed that the amount of the arbitration award against the Larken defendants could be trebled if plaintiffs prevailed on their claims under the Consumer Fraud Act, and that counsel fees and costs would also be available under that Act.
Yarrington then moved for leave to appeal from the trial court's denial of his motion for summary judgment. Having granted that motion, we now consider the questions implicated.
*559 We dispose first of the common arguments advanced by Yarrington and Blackstone, that plaintiffs' civil action claims should have been dismissed because they had been addressed and ruled upon in the arbitration and were barred by principles of collateral estoppel and election of remedies as well as the entire controversy doctrine. These positions are meritless and need not detain us at length. We are in substantial agreement with Judge Ashrafi's rationale in these respects. The arbitration was contractual, between plaintiffs and the Larken defendants only. Its scope did not extend to others, the additional defendants in the civil action besides the Larken defendants, and there is no basis in fact or law for concluding that plaintiffs made any HOW election of remedies. Plaintiffs cannot be seen to be collaterally estopped as a general matter, by reason of the arbitration, from litigating all of their claims against the non-Larken defendants, as well as their non-arbitrable claims against the Larken defendants. Although there may be some factual issues which were fully developed in the arbitration and may ultimately be seen to have preclusive consequences on an issue-by-issue basis in this caseas the trial court has already ruled in respect of some plaintiffs had no opportunity in the arbitration to litigate all claims they might have against any of the defendants, and therefore they may not be generally barred from proceeding in this civil action. See Konieczny, supra, 305 N.J.Super. at 385-88, 702 A.2d 831. Finally, the entire controversy doctrine, to the extent it retains any viability in actions of this type since the 1998 amendments to R. 4:5-1(b), 4:28, 4:29, and 4:30A (see also R. 4:27), cannot bar causes of action, such as for consumer fraud, which plaintiffs had no right or opportunity to litigate in the arbitration proceeding. See Konieczny, supra, 305 N.J.Super. at 388, 702 A.2d 831.
We are left with one remaining issue: Yarrington's amenability to a consumer fraud claim. He contends that the Consumer Fraud Act (the Act) does not apply to architects in the rendition of their professional services and therefore he is immune from suit on plaintiffs' consumer fraud claims. This position is based upon dictum in Neveroski v. Blair, 141 N.J.Super. 365, 379, 358 A.2d 473 (App.Div.1976) which, Yarrington argues, the trial court misapplied in denying his motion for summary judgment dismissal of plaintiffs' consumer fraud claims.
In this regard, Judge Ashrafi expressed the following views in his oral opinion denying Yarrington's motion:
There's no case out there that decides one way or another, or even closely suggests the answer to whether a professional, like an architect, should be subject to the Consumer Fraud Act.
... Neveroski ... seems to say very clearly that somebody like an architect should not be subject to the Consumer Fraud Act. However, I don't know whether I can follow that language at this point. I don't mean to suggest a case is not good law because it's old, but the Consumer Fraud Act has undergone a great deal of development in the courts since 1976.
And what I have to wonder about is if the language of Neveroski that I read is good law, then why did the court in Vort v. Hollander [, 257 N.J.Super. 56, 607 A.2d 1339 (App.Div.), certif. denied, 130 N.J. 599, 617 A.2d 1221 (1992),] have to go through the analysis and reasoning that it went through to decide that an attorney is not subject to the Consumer Fraud Act? Why is it that the issue is handled completely differently in the other Appellate Division case that the defendants rely on with respect to hospitals? Hampton Hospital v. Bresan, 288 N.J.Super. 372 [672 A.2d 725] [(App.Div.), certif. denied, 144 N.J. 588, 677 A.2d 760 (1996) ]. Why is there an analysis of those kinds of issues if professionals like doctors and lawyers and architects are not subject to the Consumer Fraud Act? *560 Ultimately, I believe that the defendant who's seeking a dismissal of that claim against him has the burden of showing me that the Consumer Fraud Act is not applicable. By its terms itself, it certainly seems to be potentially applicable to someone like a lawyer or an architect or even a doctor who might provide certain kinds of services for a consumer.
In Lemelledo v. Beneficial Management, 150 N.J. 255 [696 A.2d 546] [(1997)], the Supreme Court went through a lengthy analysis in deciding that the Consumer Fraud Act was potentially applicable to a company that provided loans and insurance, even though lending agencies and insurance companies are highly regulated under other state laws.
I don't know how much regulation there is of architects in New Jersey, because nobody's really argued on that to me. The briefs that have been submitted don't tell me whether or not there will be a conflict between application of the Consumer Fraud Act to architects, and some other agency that regulates architects.
I have the sense that maybe there isn't a great deal of regulation of architects the same way that there is for banks and lending institutions and attorneys and hospitals, but I don't know that. The defendant has not argued it to me at length, and hasn't shown me; hasn't persuaded me that because there would be a conflict between the regulation of architects by some other board or agency and application of the Consumer Fraud Act to architects, that that Act should not apply to them.
So the only thing I have to go with is the language from Neveroski that just makes a statement that learned professions aren't subject to the Consumer Fraud Act. And I have to conclude that that statement is not good law today; that because of the analysis of the issues in the other cases that have been cited, the courts themselves have not followed that statement as indicating who is or is not subject to the Consumer Fraud Act.
And once I discard ... that paragraph of Neveroski that I read, then it just becomes an issue of regulation by other agencies, and the specific language of the Act. And since specific language of the Act seems to apply, and I don't have evidence that other agencies regulate architects to an extended degree, I have to conclude that the Consumer Fraud Act does apply to an architect, like the Defendant Yarrington in this particular case.
The passage of dictum in Neveroski which engenders Yarrington's argument is
Certainly no one would argue that a member of any of the learned professions is subject to the provisions of the Consumer Fraud Act despite the fact that he renders "services" to the public. And although the literal language may be construed to include professional services, it would be ludicrous to construe the legislation with that broad a sweep in view of the fact that the nature of the services does not fall into the category of consumerism.

[Neveroski supra, 141 N.J.Super. at 379, 358 A.2d 473.]
We view Judge Ashrafi's rationale regarding that dictum as having considerable validity. There are other reasons for reaching the same conclusion, as well.
We begin with a legislative fact noted in Neveroski itself: we were dealing there with a transaction which predated a critical amendment of the statute. We stated the issue to be: "[T]he novel question whether the Consumer Fraud Act, in the form it existed at the time of the operative facts involved in this litigation, is applicable to real estate transactions." Id. at 376, 358 A.2d 473. We held that privity was not a precondition of eligibility for Consumer Fraud Act relief, but that real estate sales and real estate brokers were not covered under the Act as it existed at the *561 time of the transaction in question. We noted that the Legislature, in 1967, had deleted "real estate" and "securities" from the definition of "merchandise" under the Act. In 1975, however, while Neveroski was pending, the Legislature had amended N.J.S.A. 56:8-2 to broaden the Act's coverage to apply to the use of any tactic prohibited under the Act "in connection with the sale or advertisement of ... real estate" as well as merchandise. We regarded nothing in the legislative history of that amendment to be "significant or persuasive on the question of the interpretation of the act prior to said amendment[,]" Neveroski supra, 141 N.J.Super. at 377 n. 3, 358 A.2d 473, and we declined to "express any opinion as to the construction of the act as amended." Ibid. With regard to the consumer fraud liability of real estate brokers, we went on to hold that liability did not exist prior to the amendment and we opined further:
A real estate broker is in a far different category from the purveyors of products or services or other activities. He is in a semi-professional status subject to testing, licensing, regulations and penalties through other legislative provisions. See N.J.S.A. 45:15-1 et seq. Although not on the same plane as other professionals such as lawyers, physicians, dentists, accountants or engineers, the nature of his activity is recognized as something beyond the ordinary commercial seller of goods or servicesan activity beyond the pale of the act under consideration.

[Id. at 379, 358 A.2d 473.] We concluded this observation with the dictum upon which Yarrington's argument is based.
Years later, in Vort v. Hollander, 257 N.J.Super. 56, 62, 607 A.2d 1339 (App. Div.), certif. denied, 130 N.J. 599, 617 A.2d 1221 (1992), we noted that the 1975 amendment of N.J.S.A. 56:8-2 had included within the reach of the Act "deceptive practices in connection with the sale of real estate." Ibid. We held, however, that professional services rendered by attorneys with regard to their clients' rights as owners of real estate were not covered by the Act, because, among other reasons, the Legislature had not specifically covered the rendition of professional services generally. We discern that the professionals' conduct in that case did not relate to the sale of real estate, either. And, in Hampton Hospital v. Bresan, 288 N.J.Super. 372, 379, 672 A.2d 725 (App.Div.), certif. denied, 144 N.J. 588, 677 A.2d 760 (1996), we viewed the Neveroski dictum to have been "rendered obsolete by [the 1975] amendment that included within the Act deceptive practices in the sale of real estate." See also Arroyo v. Arnold-Baker & Assocs., 206 N.J.Super. 294, 296-97, 502 A.2d 106 (Law Div.1985).
If Yarrington's architectural services had been retained by any of the plaintiffs directly there might be some merit to his argument that the general principle of Vort as illuminated by our dictum in Neveroski established a basis to bar plaintiffs' consumer fraud claims against him. But that is not the situation with which we are confronted.
The Supreme Court addressed analogous issues in Lemelledo v. Beneficial Management Corp., 150 N.J. 255, 696 A.2d 546 (1997). There, against an allegation of Consumer Fraud Act violation, the defendants had argued that as entities in highly regulated industrieslending and insurancethey were beyond the reach of the Act which, they contended, was designed to cover more ordinary consumer transactions. The Court drew a distinction between the regulated conduct of those entities, and the sale of insurance in conjunction with lending, i.e., "loan packing," which the Court held was a practice covered by the Act. "In determining whether the existence of other regulations creates an exemption to the [Consumer Fraud Act] for particular conduct that otherwise would fall within its provisions, it should ordinarily be assumed that the [Consumer Fraud Act] applies to the covered *562 practice." Id. at 268, 696 A.2d 546. "The presumption that the [Consumer Fraud Act] applies to covered practices, even in the face of other existing sources of regulation, preserves the Legislature's determination to Inpeffect a broad delegation of enforcement authority to combat consumer fraud." Id. at 270, 696 A.2d 546.
The Consumer Fraud Act is written broadly, in order to protect the public. Gennari v. Weichert Co. Realtors, 288 N.J.Super. 504, 533, 672 A.2d 1190 (App.Div.1996), aff'd as modified, 148 N.J. 582, 691 A.2d 350 (1997). Its purpose is to eliminate "sharp practices and dealings in the marketing of merchandise and real estate." Channel Cos., Inc. v. Britton, 167 N.J.Super. 417, 418, 400 A.2d 1221 (App. Div.1979). As remedial legislation, it is to be liberally construed in favor of consumers. Cox v. Sears Roebuck & Co., 138 N.J. 2, 15, 647 A.2d 454 (1994); see also Lemelledo, supra, 150 N.J. at 264, 696 A.2d 546. With respect to the sale of real estate, notwithstanding our observations in Neveroski and in the light of the 1975 amendment of N.J.S.A. 56:8-2, the scope of the Act has been gradually broadened in the process of construal to apply to different persons and entities engaged in the sale of real estate, especially those involved in the sale of new homes. Strawn v. Canuso, 140 N.J. 43, 65, 657 A.2d 420 (1995) (liability of builder-developer); Gennari, supra, 288 N.J.Super. at 548, 672 A.2d 1190 (liability of realtor); Jackson v. Manasquan Sav. Bank, 271 N.J.Super. 136, 145-147, 638 A.2d 165 (Law Div.1993) (liability of bank that resold homes purchased at foreclosure sales).
Viewed broadly, the amendment to N.J.S.A. 56:8-2 adding real estate sales to the coverage of the Act can be seen as negating the notion we espoused in Neveroski that a service provider whose activity is "something beyond the ordinary commercial seller of goods or services" is exempt from the Act when engaged in real estate sales activity. Neveroski, supra, 141 N.J.Super. at 379, 358 A.2d 473. Even under a narrower view, where one would assume that the Neveroski dictum survives to the extent that it referred to the learned professions generally, the outcome of this case is not foreordained. Neveroski`s observation that members of the learned professions are immune from the Act was premised on the recondite qualities of professional services. In this case, plaintiffs claim that Yarrington made false representations of a rather commonplace variety, about the building materials to be used among other things, thereby prompting the plaintiffs to buy the homes. Viewed thusly, Yarrington's conduct bears directly upon the sale of a covered product (real estate) rather than the rendition of a professional service, and falls squarely within the prohibitions of the Act.
The New Jersey Supreme Court has also held that the Act
is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate.

[Daaleman v. Elizabethtown Gas Co., 11 N.J. 267, 270, 390 A.2d 566 (1978).]
Elaborating on the legislative purpose behind the Act, the Court explained that
the legislative concern was over sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices.

[Id. at 271, 390 A.2d 566.]
In Gilmore v. Berg, 761 F.Supp. 358, 375-76 (D.N.J.1991), the activities of an accountant and an attorney in transactions involving real estate were held to be subject to the New Jersey Consumer Fraud Act. In the face of an argument that they were shielded from consumer fraud liability under the "learned professional" formulation of Neveroski, the U.S. District Court regarded them as covered because they were *563 instrumental in a dubious sale of real estate. Id. at 376, 358 A.2d 473.
The record before us provides only skeletal factual background and the same attenuated presentations on some legal issues referred to by Judge Ashrafi upon which to base our analysis. This record is adequate, however, to demonstrate an essential difference, in statutory terms, between this case and Vort. Here, Yarrington was engaged by the Larken defendants to provide architectural services to Larken Associates in the design of the homes offered for public sale, including special services to those home buyersat least three of the five plaintiff families in this matterwho wished to have custom-designed houses. Yarrington and the Larken defendants had been associated for about ten years. There was no direct contractual relationship between Yarrington and any of the plaintiffs. The purchase price of the homes included Yarrington's services. Those who wished additional architectural services might be billed by Larken Associates for amounts in addition to the contract price. Yarrington was paid by Larken at "current hourly rates." In these ways, Yarrington was an integral part of the Larken defendants' merchandising of homes for sale. By contrast, in Vort, the attorneys involved had undertaken to represent the owners of real estate in a dispute with a homeowners' association over the use of the property. Vort, supra, 257 N.J.Super. at 58, 607 A.2d 1339. The professionals' involvement had nothing to do with the sale of real estate, and we based our decision regarding the consumer fraud issue solely on the principle that the professional services involved were not covered by the Act. Id. at 62, 607 A.2d 1339.
Plaintiffs allege that, on several occasions, Yarrington reinforced the contractual expectations of at least some of them by reviewing with them the development of the designs for their homes. It is contended on behalf of those plaintiffs that Yarrington's representations to them that he would design their houses in accordance with their specifications induced them to sign the contracts with Larken Associates. Plaintiffs allege further that, rather than providing custom design, Yarrington signed and sealed a set of stock plans to satisfy requirements for the issuance of the necessary building permits; and he failed to customize the plans afterwards. This conduct, plaintiffs contend, frustrated their reasonable expectations in their dealings with the Larken defendants, Yarrington's principal. Moreover, in addition to these "breach of contract" allegations, plaintiffs accuse Yarrington of having violated BOCA (Building Officials and Code Administrators) Code requirements in various ways.
Also, expressly with respect to their common law and consumer fraud contentions, plaintiffs specifically allege that Yarrington participated with the Larken defendants in the conduct which Jured plaintiffs into purchasing homes that were never properly constructed, and he purported to custom design houses which did not conform with design specifications. One particular allegation of fraud pertains to the type of windows used in the construction. Plaintiffs contend that Yarrington used specifications from high-quality Andersen windows in his designs, while knowing from his experience with the Larken defendants that they would install only inferior Ideal windows. When plaintiffs remarked on the difference in quality, Yarrington is said to have denied that such a difference existed. Over a relatively short period of time, the windows deteriorated greatly and severe leakage resulted.
Yarrington responds to plaintiffs' allegations in several ways. First, he denies that he owed plaintiffs any duty, contractual or otherwise. He maintains that his only contractual undertaking was to "design a plan for a two-story one-family wood frame home," not to supervise the work while in progress. It appears that Yarrington testified during the arbitration that he had never seen the contracts between *564 the Larken defendants and the plaintiffs, and that he had prepared his design drawings without reference to the specifications contained in the contracts. Yarrington also denies having met plaintiffs and having made representations to them regarding the construction plans. However, in his testimony during arbitration, Yarrington, in describing his standard procedure when dealing with specific design requests, acknowledged that he had dealt directly with the Franzis. It is clear that material facts bearing upon plaintiffs' consumer fraud claims are in issue.
Without deciding the more abstract question whether architectural services in general are covered by the Consumer Fraud Act, we conclude that plaintiffs have made a prima facie showing, sufficient to survive a motion for summary judgment, see Brill v. Guardian Life Ins. Co., 142 N.J. 520, 529-30, 666 A.2d 146 (1995), concerning Yarrington's involvement in the marketing and sales efforts regarding the real estate they purchased. This case does not concern plaintiffs' rights as clients of a "learned professional" regulated under a scheme of professional or occupational licensure. Rather, in the terms of the Consumer Fraud Act itself, plaintiffs are litigating Yarrington's involvement in an alleged
unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of ... real estate, or with the subsequent performance of such person[.]

[N.J.S.A. 56:8-2.]
By their very nature, an architect's professional services typically relate to real estate. Where the question is solely one concerning the quality of those professional services, there may be no adequate basis for asserting liability under the Consumer Fraud Act. But where the architect has involved himself either as a principal or a retained professional in a real estate marketing venture wherein he permits his services to be held out as part of what is being sold, or provided by way of influencing purchasers to enter into contracts, or to maintain contractual relationships, he becomes subject to the Consumer Fraud Act just as every other person involved in inducing the sale or preserving the transaction may be. Based on what has been shown thus far, plaintiffs are entitled to an opportunity to prove that Yarrington engaged in conduct prohibited by the Act and that he is liable under its provisions.
Accordingly, the trial court's denial of the motions for summary judgment is affirmed and the matter is remanded for further proceedings.