759 A.2d 360 (1999)
334 N.J. Super. 305
S & D ENVIRONMENTAL SERVICES, INC. and Edward McCracken, Plaintiffs,
v.
ROSENBERG RICH BAKER BERMAN & CO., P.A., Theodore S. Spritzer, Frank S. LaForgia and Alan P. Levine, Defendants.
Superior Court of New Jersey, Law Division, Bergen County.
Decided September 24, 1999.
*361 Jay I. Lazerowitz, Esq., Glennrock, Attorney for Plaintiffs.
Paul A. Carbon, Esq., Newark, (Morgan, Melhuish, Monahan, Arvidson, Abrutyn & Lisowski), Attorney for Defendants.
YANNOTTI, J.S.C.
Plaintiffs S & D Environmental Services, Inc. (S & D) and Edward McCracken, President of S & D, brought this action against the defendants Rosenberg Rich Baker Berman & Co., Theodore S. Spritzer, Frank S. LaForgia and Alvin P. Levine asserting claims of professional negligence, breach of contract, consumer fraud, common law negligence, common law fraud, deceit, misrepresentation and violation of the Federal Racketeer Influenced *362 and Corrupt Organizations (RICO) Act, 18 U.S.C.A. §§ 1961-1968. Before the court is a motion by the defendants for summary judgment. For the reasons stated herein, the defendants' motion will be granted in its entirety and the complaint will be dismissed with prejudice.

I
The facts stated herein are drawn from the complaint and the evidentiary materials submitted on this motion. R. 4:46-2(c). For purposes of this motion, the court will consider the evidence and the inferences which may reasonably be drawn from same in a light most favorable to the plaintiff. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 536, 666 A.2d 146 (1995).
The defendant Rosenberg Rich Baker Berman & Co. was retained by S & D in 1994 to provide general and specialized accounting services, including the preparation of federal tax returns. Defendants Spritzer, LaForgia and Levine are Rosenberg accountants who provided the services that form the basis for this action. Rosenberg and the individually named Rosenberg accountants will be referred to collectively as "Rosenberg" in this opinion. S & D claims that the federal tax advice provided to it by Rosenberg was erroneous and caused S & D to incur tax liabilities which could have been avoided had Rosenberg correctly advised it of its options and obligations under federal tax law.
The dispute concerns the manner in which S & D was required to report its income and expenditures for federal tax purposes. There are two methods of reportingthe cash method and the accrual method. If the cash method is employed, the taxpayer reports income when it is actually or constructively received, and reports expenditures when they are paid. When the accrual method is used, the taxpayer reports income in the year it is earned and the taxpayer reports expenses in the year in which the obligation to pay particular expenses arose.
The federal tax code provides specific requirements for the use by corporations of the cash and accrual methods of accounting. As a general matter, a C-corporation may not employ the cash method. 26 U.S.C.A. § 448(a)(1). However, a C-corporation may use the cash method for its tax returns when the corporation's average annual gross receipts do not exceed $5 million for the three tax years prior to any current year. 26 U.S.C.A. § 448(b)(3). If the C-corporation's average annual gross receipts in the relevant three year period exceed $5 million, the corporation must convert from the cash method to the accrual method on the first day of the current tax year. See Litigation Support Report for S & D, prepared by Wilkin & Guttenplan, dated April 29, 1998, at 4. (hereinafter Wilkin Report).
An S-corporation is permitted to employ the cash method of accounting and is not subject to the $5 million gross receipts test in 26 U.S.C.A. § 448(b)(3). Any C-corporation that fails the $5 million test may elect to change to S-corporation status; however, this election must be made by the 15th day of the third month of the then current tax year. If the C-corporation converts to the status of an S-corporation, the corporation may continue to employ the cash method of accounting for tax purposes for the year in which the election is made and future tax years, unless the corporation is otherwise precluded from employing that method of accounting. Wilkin Report at 6.
According to S & D, the Internal Revenue Service (IRS) has taken the position that all corporations that have "inventory" must use the accrual method of accounting. The IRS's regulations require that inventories be kept "in all cases in which the purchase, or sale of merchandise is any kind of an income-producing factor." Regulation 1.446-1(a)(4)(i). A corporation which does not sell "merchandise" but merely uses supplies in its business may use the cash method. Wilkin Report at 6-7.
*363 S & D further contends that under the Internal Revenue Code, when a taxpayer is required to change from the cash method to the accrual method, the taxpayer may make that change by filing a Form 3115. The form must be filed no later than the date the corporation is required to file its tax return for the first year of the change. Wilkin Report at 5.
S & D reported its income on a cash basis from its inception as a corporate entity. Wilkin Report at 9. Although a C-Corporation, S & D claims it was permitted to employ the cash basis of accounting since its average annual gross receipts for any three tax years did not exceed $5 million. However, according to S & D, Rosenberg had information in November 1994 which indicated that S & D would not satisfy the $5 million gross receipts test. S & D contends that it was required by the Internal Revenue Code to use the accrual method of accounting for the tax year commencing on October 1, 1994 (the 1994 tax year), unless S & D elected S-corporation status. That election had to be made by December 15, 1994. Wilkin Report at 11.
S & D alleges that Rosenberg erred in its analysis of the relevant provisions of the federal tax law and failed to correctly advise S & D of its obligations and options for federal tax purposes. S & D's contentions are summarized in the report of its expert:
Rosenberg did not identify that S & D failed the IRC Section 448 "$5 million test" and did not advise S & D of its option of retaining their cash method of accounting by electing S-corporation status for the tax year beginning October 1, 1994. Rosenberg did not explain to S & D that it would be required to convert to the accrual method of accounting for the tax year beginning October 1, 1994, and that if S & D failed to convert to the accrual method of accounting, it would be violating U.S. tax law. Additionally, Rosenberg did not inform S & D that in converting from the cash method of accounting to the accrual method of accounting, an adjustment to S & D's income to account for the difference between the cash method and the accrual method of accounting would be required by S & D for tax purposes over a four (4) year period under IRC Section 448(d)(7). [Wilkin Report at 11].
In or about December 1995, Rosenberg prepared S & D's tax returns for the 1994 tax year. Rosenberg prepared the return using the cash method. The return was signed by S & D's President and filed with the IRS. Wilkin Report at 14.
At or about this same time, in December 1995, Rosenberg allegedly came to believe that S & D's average annual gross receipts for the three year period ending September 30, 1995 exceeded $5 million and that S & D would be required to change to the accrual method for the tax year which began October 1, 1995. (the 1995 tax year). Rosenberg suggested that S & D could covert to S-corporation status for the 1995 tax year.
S & D contends that this recommendation was a year too late. Wilkin Report at 21. Rosenberg raised the issue with S & D on the eve of the December 15 filing deadline for the election of S-corporation status. Ibid. Rosenberg advised S & D that the election of S-Corporation status would allow S & D to continue to file its tax returns employing the cash method of accounting. Id. at 25.
Rosenberg's recommendation prompted further discussions and analysis by S & D. S & D thereupon sought other advice concerning its tax options. S & D maintains that it then became clear that it could not employ the cash method on the tax return for the 1994 tax year because it had failed the $5 million gross receipts test and had not elected S-corporation status by December 15, 1994. Thus, according to S & D, although it could elect S-corporation status in December 1995, that election would allow it to employ the cash method on a going-forward basis but would not shield it *364 from potential tax liabilities for the 1994 year since its return did not employ the correct method of accounting. Wilkin Report at 29.
S & D retained Wilkin & Guttenplan to assist it with the tax issues it was facing. Wilkin provided S & D with a series of options to consider. Wilkin recommended that S & D volunteer to the IRS that S & D had "inventory" and adopt the accrual method of accounting for the tax year commencing October 1, 1995. Wilkin advised that by voluntarily coming forward to the IRS to correct an "erroneous" method of accounting, S & D would receive audit protection because the IRS would not be permitted to look to a taxpayer's prior period and change the taxpayer's accounting method for that period. Wilkin Report at 33.
However, in order to qualify for such audit protection, the taxpayer must have employed the "erroneous" methodology for at least two years. S & D could not rely upon the taxpayer's failure to meet the $5 million test for purposes of the 1994 tax year because S & D had only employed the cash method based on that "error" for a single year. Wilkin recommended that S & D take the position that it had "inventory" in order to get audit protection because the use of the cash method based on that analysis meant that it had erroneously filed its tax returns on the cash method for more than the two years.
S & D maintains that it could have validly taken the position that it had "supplies" not "inventory," a position that would have allowed it to employ the cash method of accounting if it elected S-corporation status. But S & D opted to take the position that it had "inventory" and was required to employ the accrual method. S & D contends that this option was selected to avoid the potential of an IRS audit for the 1994 tax year, which could have resulted in a $1.4 million increase in its income for that year. Wilkin Report at 33.
On or about March 28, 1996, Wilkin filed with the IRS the Form 3115 for and on behalf of S & D. The Form stated that S & D was voluntarily seeking approval of a change from the cash method to the accrual method of accounting. S & D stated in the application that it was a contractor engaged in the environmental services business and maintained an "inventory" of certain merchandise which S & D sold in connection with the provision of its services. The average annual cost of the merchandise exceeded $300,000 in the period from 1990-1995 and, therefore, was said to be "an income producing factor." Because the relevant IRS regulations require that the accrual method of accounting be employed when it is necessary to use an inventory, the application concluded, "[T]he taxpayer should have been using the accrual method of accounting since inception." The application was signed under "penalties of perjury." The application was executed by Edward Wilkin of Wilkin & Gutterplan as representative of S & D. Exhibit D to Certification of Paul A. Carbon (Carbon Certification).
In January 1997, the IRS issued a letter ruling granting S & D's request to change its method of accounting. The IRS required S & D to execute a "Consent Agreement" which stated that the application was approved based on the facts presented and the representations made by the taxpayer. The IRS ruling contains a section called "Facts and Representations" which includes the fact that S & D maintained an inventory of merchandise for sale as part of its package of services. Exhibit F to Carbon Certification. Plaintiff Edward McCracken of S & D executed the consent agreement on March 4, 1997. Ibid.
S & D contends that since it elected to employ the accrual method of accounting it has paid a greater amount of taxes than would have been the case had it continued to employ the cash method. Its expert has calculated this difference to be $441,500. Wilkin Report at 44.

*365 II
Rosenberg argues that summary judgment should be granted in its favor on Counts One (Accounting Malpractice), Two (Breach of Contract), Four (Common Law Negligence), Five (Common Law Fraud), Six (Misrepresentation), Seven (Deceit) and Nine (Punitive Damages) of the Complaint. These separately stated causes of action are based on the allegation that Rosenberg failed to take actions and render advice that would have allowed S & D to continue to employ the cash method of accounting for tax purposes. Rosenberg contends that claims based on this assertion cannot stand in light of S & D's statements on the Form 3115 that S & D had "inventory" and was required to employ the accrual method of accounting for tax purposes from its inception as a corporate entity.
In the court's opinion, the statements made by S & D on the Form 3115 warrant the entry of summary judgment in favor of Rosenberg and the Rosenberg accountants on Counts One, Two, Four, Five, Six, Seven and Nine of the Complaint. The statements in the Form 3115 are wholly inconsistent with the key assertion advanced in this matter, specifically the assertion that Rosenberg committed professional malpractice and other actionable wrongs by failing to advise S & D in December of 1994 to take steps to preserve its ability to employ the cash method. S & D insists the advice rendered did not measure up to generally accepted professional standards even though it asserted in the Form 3115, under penalty of perjury, that it should have employed the accrual method of accounting from its inception as a corporation. This patent inconsistency thoroughly undermines the foundation of S & D's claims in this action and requires their dismissal.
The inconsistency between the positions asserted in the Form 3115 and in this case also calls for the application of judicial estoppel. Judicial estoppel may be applied to prevent a party from taking a position that contradicts a position previously taken. State, Department of Law & Public Safety v. Gonzalez, 142 N.J. 618, 632, 667 A.2d 684 (1995). The doctrine is intended to prevent litigants from "playing fast and loose with the courts" and assuming "a position in one court entirely different or inconsistent with that taken by him in another court or proceeding with reference to the same subject matter." Levin v. Robinson, Wayne & LaSala, 246 N.J.Super. 167, 178, 586 A.2d 1348 (Law Div.1990). The purpose of the doctrine is to protect the integrity of the judicial system. Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 359 (3d Cir.1996). See also EF Operating Corp. v. American Buildings, 993 F.2d 1046, 1050 (3d Cir.), certiorari denied, 510 U.S. 868, 114 S.Ct. 193, 126 L.Ed.2d 151 (1993) ("It goes without saying that one cannot casually cast aside representations, oral or written, in the course of litigation, simply because it is convenient to do so.").
The doctrine may be applied where, as here, a party to a judicial proceeding asserts a position that contradicts a position previously taken in an administrative proceeding. In McNemar v. Disney Store, Inc., 91 F.3d 610 (3d Cir. 1996), the court applied judicial estoppel to bar an individual from asserting a claim under the Americans with Disabilities Act, the New Jersey Law Against Discrimination and certain other laws, claiming that he was a qualified individual with a disability because the litigant had previously represented to state and federal government agencies that he was totally disabled an unable to work. The court rejected the contention that the prior representations had to be made in judicial proceedings and determined that representations made to administrative agencies could form the basis for application of judicial estoppel. See also Morton International Inc. v. General Acc. Ins. Co. of America, 134 N.J. 1, 73-76, 629 A.2d 831 (1993) (insurance industry estopped from asserting a position in litigation that contradicts representations *366 made to Commissioner of Insurance concerning effect of certain policy exclusions).
In this case, S & D is endeavoring to cast aside the position it previously took with the IRS. S & D asserted without qualification that it was required to employ the accrual method of accounting on its tax returns from its inception as a corporation. It was able to avoid an assessment of additional taxes due to those statements. S & D has taken a contrary position in this matter. It argues that it could lawfully have employed the cash method of accounting for tax purposes and, further, that Rosenberg erred by failing to advise it to take steps to preserve its ability to file returns on the cash basis. The doctrine of judicial estoppel is intended to preclude a party from taking such patently inconsistent positions.
S & D maintains, however, that any inconsistency between the statements in the Form 3115 and its position in this case can be fully explained. S & D avers that it could have validly taken the position that it did not have "inventories," within the meaning of the relevant IRS regulations, and could have continued to employ the cash method of accounting as an S-Corporation. S & D claims it elected to file the Form 3115 to limit the potential for an audit and assessment on the return for the 1994 tax year which was erroneously prepared by Rosenberg using the cash method. To obtain audit protection, S & D was required to make statements and representations that bound it to employ the accrual method of accounting for future tax years. S & D says that but for Rosenberg's erroneous advice and the potential for an assessment for the 1994 tax year due to that erroneous advice, S & D could validly have continued to employ the cash method.
These contentions are unavailing. The short answer to S & D's assertions is that it made its choice by filing the Form 3115 wherein it bound itself to employ the accrual method of accounting. S & D stated unequivocally under penalty of perjury that it had "inventories" and should have been filing its returns using the accrual method from the start of its corporate existence. The IRS approved the change in accounting methods based on those statements and representations. S & D signed a Consent Agreement with the IRS which explicitly stated that the application was approved based on the facts as stated by S & D in its application.
S & D surely is required to adhere to that agreement in any federal tax return filed with the IRS. S & D should be held to those same facts and representations in this action. It took the position that it was required to employ the accrual method from the inception of its corporate existence. It will not be permitted to pursue a cause of action against Rosenberg in this court on the theory that it was legally permitted to use the cash method.
It should be added that if S & D reasonably believed, as it contends in this matter, that it could lawfully employ the cash method of accounting for tax purposes, it could have elected S-corporation status and retained the ability to use the cash method for the 1995 tax year and future tax years. S & D could then have sought relief in this action for any additional taxes it may have been required to pay on the 1994 tax return due to some error or omission on Rosenberg's part in the preparation of that return.
But S & D did not follow that course. It chose to file the Form 3115 and assert in that filing that it was legally required to employ the accrual method of accounting and had been so required since it began as a corporation. By doing so, it secured the benefits of avoiding an assessment of additional taxes on the 1994 tax return. S & D now wishes to cast aside those sworn statements and advance an inconsistent theory in this action. Were the court to allow this, it would be permitting S & D to pursue a cause of action that is based on a theory wholly at variance with statements made by S & D to the IRS under penalty *367 of perjury. Judicial estoppel will be applied to preclude S & D from doing so.
Therefore, the defendants' motion for summary judgment on Counts One, Two, Four, Five, Six, Seven and Nine of the Complaint shall be granted.

III
Rosenberg also moves for Summary Judgment on Count Three of the Complaint, in which S & D alleges a violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. Rosenberg maintains that the Act does not apply to representations made in the course of the provision of professional services. For the reasons that follow, Rosenberg's motion will be granted.
The court's primary goal in construing the Consumer Fraud Act is to ascertain the Legislature's intent. State v. Gonzalez, 142 N.J. 618, 627, 667 A.2d 684 (1995). The starting point of that analysis is the language of the statute. State v. Kittrell, 145 N.J. 112, 122-23, 678 A.2d 209 (1996). The Act declares that the use or employment of unconscionable commercial practices, deceptions, frauds, false promises, misrepresentations or the knowing concealment of a material fact in connection with the sale of merchandise or real estate is an unlawful act. N.J.S.A. 56:8-2. Our Supreme Court has stated that the Act was designed to "prevent deception, fraud or falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate." Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 376-77, 371 A.2d 13 (1977).
In Neveroski v. Blair, 141 N.J.Super. 365, 358 A.2d 473 (App.Div.1976), the court held that the Consumer Fraud Act did not apply to services provided by real estate brokers. The court determined that "the entire thrust" of the Act is addressed to the sale of products and services to consumers "in the popular sense." Id. at 378, 358 A.2d 473. In the court's view, a real estate broker is "in a far different category from the purveyors of products or services or other activities." Id. at 379, 358 A.2d 473. Although not considered to be on the "same plane" as other professionals, such as lawyers or accountants, a real estate broker was considered to be "something beyond the ordinary commercial seller of goods or services." Ibid. The court added that it would be "ludicrous" to interpret the Act to apply to any of the "learned professions" since the nature of the services involved does not fall "into the category of consumerism." Ibid.
In Vort v. Hollander, 257 N.J.Super. 56, 62, 607 A.2d 1339 (App.Div.), certif. denied, 130 N.J. 599, 617 A.2d 1221 (1992), the court considered whether the Act applied to professional services rendered by attorneys with regard to their clients' rights as owners of real estate. The court found that the Act was inapplicable. The court noted that although the Legislature had amended the law in 1975 to cover services provided by real estate brokers, the Legislature had not specifically applied the Act to professional services generally. Furthermore, as the court pointed out, the practice of law in New Jersey is regulated by the Supreme Court. The court added, "Had the Legislature intended to enter the area of attorney regulation it surely would have stated with specificity that attorneys were covered under the Consumer Fraud Act." Vort, 257 N.J.Super. at 62, 607 A.2d 1339.
The Neveroski and Vort decisions thus make clear that the Act does not apply to claims based on allegations that a member of a regulated profession provided negligent or wrongful advice. The Act has been amended to permit claims to be stated against real estate brokers but it has not been amended to cover claims against attorneys or other regulated professionals, such as accountants. Thus, the Act does not apply to the claims stated against Rosenberg and its accountants in this action.
*368 The plaintiffs rely upon Gilmore v. Berg, 761 F.Supp. 358 (D.N.J.1991), and Blatterfein v. Larken Associates et als., 323 N.J.Super. 167, 732 A.2d 555 (App.Div. 1999), in support of their contention that the alleged wrongful advice by Rosenberg in this matter may form the basis for a claim under the Consumer Fraud Act. Neither case supports plaintiffs' contentions.
The Gilmore case was brought by two individuals who had purchased unregistered securities in a limited partnership. The partnership acquired certain commercial properties from a bankrupt entity for $2.5 million, and on the same day resold the properties for greater sums. The plaintiffs claimed that these transactions were intended to diminish the value of their investments and made it unlikely that they would realize the profits and appreciation they expected when they purchased their shares in the limited partnership. One of the defendants was an accountant who reviewed financial projections of the limited partnership and signed a forecast letter included in the offering statement. In the letter, the accountant stated that the assumptions and rationale underlying the projected financial statements were reasonable. Gilmore v. Berg, 761 F.Supp. at 363. The federal district court denied the motion to dismiss the count alleging violations of the Consumer Fraud Act. The court found that the complaint contained facts alleging fraud in the sale of real estate, which sales are specifically covered by the Act.
A similar result was reached by the court in Blatterfein v. Larken Associates, et als., supra, where the court determined that a cause of action could be stated under the Act against the defendant architect by purchasers of custom designed homes. The court emphasized that the Act specifically covered real estate transactions. Plaintiffs' claims were not addressed to the specialized quality of the professional services provided by the defendant architect but were instead based on claims that the architect made false representations "of a rather commonplace variety" concerning the building materials to be used to construct the homes, representations that were designed to induce the purchase of the homes by the plaintiffs. Such representations, bearing upon a transaction explicitly covered by the Act, fall within the actions or practices prohibited by the Act. Blatterfein, 323 N.J.Super. at 182-83, 732 A.2d 555.
Thus, both Gilmore and Blatterfein hold that the Consumer Fraud Act may be applied to certain professionals when their alleged wrongful actions are taken in connection with the sale of real estate. The Appellate Division in Blatterfein stated that the court's comment in Neveroski that those in the regulated professions are not subject to liability under the Act "was premised on the recondite qualities of professional services." 323 N.J.Super. at 179, 732 A.2d 555. The Blatterfein case involved the architect's involvement in a scheme to market and sell properties and did not involve plaintiffs' rights as clients of a "learned professional" regulated under a scheme of professional or occupational licensure. Id. at 182, 732 A.2d 555. Similarly, as the Blatterfein court noted, the activities in Gilmore were deemed covered by the Act because the activities were "instrumental in a dubious sale of real estate." Id. at 180, 732 A.2d 555.
Since the Neveroski and Vort decisions concluded that the Consumer Fraud Act did not apply to the actions of "learned professionals," the Legislature has not seen fit to amend the Act to cover those actions. The courts have, however, permitted actions to proceed when the alleged wrongful conduct by professionals did not involve plaintiff's rights as clients of any professional but instead were linked to and were instrumental in a transaction covered by the Act. In the absence of such a factual link, a claim pertaining to a client's rights as a client of a learned professional is outside of the purview of the Act.
This case falls on the Neveroski and Vort side of the line. It involves claims *369 related to Rosenberg's actions in providing tax advice to plaintiffs. Accountants are professionals regulated under a scheme of professional licensure. See N.J.S.A. 45:2B-42, et seq. (regulation of accountants by New Jersey State Board of Accountancy). The advice at issue in this case did not pertain to any sale or transaction that is covered by the Consumer Fraud Act.
Accordingly, the defendants' motion for summary judgment will be granted and plaintiffs' claims for relief under the Consumer Fraud Act will be dismissed.

IV
Finally, Rosenberg moves for summary judgment on Count Eight in which the plaintiffs assert claims under the federal RICO statute. Plaintiffs claim that two or more of the defendants engaged in a pattern of rendering accounting and tax advice that was illegal and in contravention of the federal tax laws and, further, engaged in a conspiracy to prevent the plaintiff from learning "the truth of these laws." Complaint, Count Eight, paragraphs (a)(b). The plaintiffs further allege that defendants engaged in a conspiracy and encouraged S & D "to file documents with the Internal Revenue Service that would have been illegal." Id., paragraph (c).
The federal RICO statute makes it unlawful "for any person employed by or associated with an enterprise" to conduct or participate, directly or indirectly, "in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C.A. § 1962(c). The acts which qualify are set forth in 18 U.S.C.A. § 1961(1) and include acts chargeable under certain state and federal criminal laws, including mail and wire fraud. The alleged acts of "racketeering" must be related and must establish a threat of continued "racketeering activity." H.J. Inc. et al. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).
The substance of plaintiffs' RICO allegations is set forth in the brief submitted on their behalf in opposition to the motion for summary judgment. Plaintiffs contend that the defendants operate an accounting firm which is alleged to be a separate entity for RICO purposes. Plaintiffs further state that defendants engaged in the preparation of tax returns, which are sent through the mails to the IRS. Defendants charge for their services and the conduct complained of, according to plaintiffs, "involved repeated instances of preparation of tax returns, and other documents, which were false." Brief of Plaintiffs, in Opposition to the Motion for Summary Judgment.
The defendants have moved for summary judgment asserting that a cause of action cannot be stated against them under RICO since they did not participate in "the operation and management" of S & D, citing Reves v. Ernst & Young, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). The defendants also contend that the plaintiffs have failed to allege facts that constitute a "pattern of racketeering activity." The court agrees with the defendants that the facts alleged in this action do not add up to a "pattern of racketeering activity" under the federal RICO law.
The plaintiffs have alleged that the Rosenberg accountants blundered in their advice and that a tax return was prepared that employed the wrong method of accounting. Although the plaintiffs contend that the Rosenberg accountants knew or should have known that their advice was wrong and the tax return was "false," it has not come forward with sufficient facts to show that the actions complained of rise to the level of culpability required to state a cause of action under the federal RICO law. Simply stated, the giving of mistaken tax advice and the preparation of a tax return using the wrong method of accounting are not predicate acts of "racketeering activity" as defined in 18 U.S.C.A. § 1961(1).
*370 Therefore, the court will grant the defendants' motion for summary judgment on Count Eight of the Complaint.

IV
For the reasons stated herein, defendants' motion for summary judgment will be granted in its entirety and the complaint shall be dismissed with prejudice.