840 A.2d 238

JOSEPH MACEDO, ROSEMARY LESKY, AND ALL OTHERS SIMI-
LARLY SITUATED, PLAINTIFFS–RESPONDENTS, v. JOSEPH
DELLO RUSSO, M.D., JOSEPH DELLO RUSSO, M.D., P.A. T/A
NEW JERSEY EYE CENTER, MEDICAL CARE, P.L.L.C. D/B/A
DELLO RUSSO LASER VISION, WILLIAM T. KELLOGG, M.D.,
DEFENDANTS–APPELLANTS, AND JOHN DOES 1–10 AND
ABC CORPORATIONS 1–10, DEFENDANTS.

Argued December 1, 2003—Decided February 2, 2004.

*Steven I. Kern* argued the cause for appellants (*Kern, Augustine, Conroy & Schoppmann; Mintzer, Sarowitz, Zeris, Ledva & Meyers* and *Giblin & Combs,* attorneys for Joseph Dello Russo, M.D.; *Hein, Smith, Berezin, Maloof & Jacobs,* attorneys for New Jersey Eye Center; and *Sanders & Larsen,* attorneys for William T. Kellogg, M.D.; *Mr. Kern, Daniel J. McCarthy, John L. Shanahan, Donald H. Larsen, David S. Cohen* and *Kevin E. Glory,* on the briefs).

*Bruce H. Nagel* argued the cause for respondents (*Nagel Rice Dreifuss & Mazie,* attorneys).

*Vincent A. Maressa,* Executive Director, argued the cause for *amicus curiae* Medical Society of New Jersey.

*Steven N. Flanzman,* Senior Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey,

*(Peter C. Harvey,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*Steven W. Suflas* and *Karol Corbin Walker,* President, submitted a brief on behalf of *amicus curiae* New Jersey State Bar Association *(Ballard Spahr Andrews & Ingersoll,* attorneys; *Mr. Suflas, Glenn A. Harris* and *Richard D. Gallucci, Jr.,* on the brief).

*Bruce H. Stern* submitted a brief on behalf of *amicus curiae* Association of Trial Lawyers of America–New Jersey *(Stark & Stark,* attorneys).

PER CURIAM.

Plaintiffs Joseph Macedo and Rosemary Lesky sued Dr. Joseph Dello Russo, the corporate entities he created to perform laser surgery, and Dr. William T. Kellogg alleging, among other things, that defendants violated the Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –116, when they allowed Kellogg, who was not fully licensed, to treat plaintiffs. Plaintiffs do not allege that their treatment fell below the appropriate medical standard of care or that they suffered any physical injuries as a result thereof, but only that

> through their own words and conduct, the defendants represented to each plaintiff that they would be treated by properly licensed doctors, with no limitations on their licenses, and that Kellogg was a licensed physician with no limitations upon his license, and licensed to provide the care and treatment which he provided to each plaintiff.

Consequently, plaintiffs claim that they suffered "mental anguish," loss of enjoyment of life, medical bills and economic damages for which they seek "compensatory damages, punitive damages, attorneys fees, interest, [and] costs."

The trial court granted defendants' motion to dismiss the CFA count because the allegations underlying it implicate the provision of medical services, a subject outside the purview of the Act. On leave to appeal, the Appellate Division reversed. *Macedo v. Dello Russo,* 359 *N.J.Super.* 78, 819 *A.2d* 5 (2003). In support, the court cited its decision in *Blatterfein v. Larken,* 323 *N.J.Super.* 167, 732

A.2d 555 (App.Div.1999) (holding that architect's activity as real estate seller is subject to CFA) and our decision in *Lemelledo v. Beneficial Management Corp.*, 150 *N.J.* 255, 696 *A.*2d 546 (1997) (finding that existence of other regulatory schemes regarding practices of financial institutions presents no limit on applicability of CFA). *Id.* at 81, 83, 819 *A.*2d 5. In reference to *Neveroski v. Blair*, 141 *N.J.Super.* 365, 358 *A.*2d 473 (1976) (concluding real estate broker who negotiates sale of real estate is outside scope of CFA), the court stated:

> To the extent the limiting *dictum* in *Neveroski* ever had a basis in apparent legislative design, subsequent statutory and decisional developments have negated it as a categorical exception to application of the Act. We see no good reason to apply it as a valid, general basis for dismissing claims under the Act as a matter of law.
>
> [*Macedo, supra,* 359 *N.J.Super.* at 83–84, 819 *A.*2d 5.]

We disagree with that analysis as well as with the Appellate Division's reliance on *Blatterfein* and *Lemelledo,* decisions we view as unsupportive of its conclusion. We, therefore, reverse.

In 1960, the Legislature adopted the precursor to the CFA, creating liability in connection with fraud in advertising. *L.* 1960, *c.* 39, p. 137, § 1. The Act obviously was not meant to encompass advertising by physicians because such advertising was not permitted for another two decades.[1] Indeed, it was the 1977 decision of the United States Supreme Court in *Bates v. State Bar of Arizona,* 433 *U.S.* 350, 97 *S.Ct.* 2691, 53 *L.Ed.*2d 810 (1977), that precipitated professional advertising. There, the Court held that although advertisements by attorneys are subject to regulation, they are not subject to "blanket suppression" because they constitute protected speech. *Id.* at 383, 97 *S.Ct.* at 2708–9, 53 *L.Ed.*2d at 835. Thereafter, the Attorney General of New Jersey ruled that a total prohibition against advertising of services by professionals is a First Amendment violation, *U.S. Const.* amend. I., but that reasonable regulation of that advertising is not precluded.

---

[1] In 1978, The New Jersey Board of Medical Examiners enacted a new rule allowing advertising by physicians, pursuant to the authority of *N.J.S.A.* 45:9–2. 10 *N.J.R.* 394 (May 14, 1978).

Atty.Gen.F.O.1977, No. 20. The amended physician's advertising rule followed on the heels of those developments. *See also DR* 1–201 (1979) (allowing and regulating attorney advertising).

Since its enactment, the CFA has not been amended to include the advertising of professionals. In fact, the only major substantive change concerning the scope of the CFA came in 1976, when the Act was amended to include the sale of real estate in the definition of "merchandise."

Contemporaneous with that amendment, the first judicial opinion addressing the applicability of the CFA to professionals was rendered, coincidently relating to the sale of real estate. In *Neveroski, supra,* the Appellate Division was faced with the question of whether a real estate broker who deliberately concealed the termite infestation of a home from potential buyers was subject to CFA liability. In ruling that it was not, the court relied on two basic premises. The first was that the CFA had been amended after the acts complained of specifically to include the sale of real estate, thus indicating that the prior version did not encompass that subject. Second, the court stated:

> A real estate broker is in a far different category from the purveyors of products or services or other activities. He is in a semi-professional status subject to testing, licensing, regulations, and penalties through other legislative provisions. *See N.J.S.A.* 45:15–1[e]t seq. Although not on the same plane as other professionals such as lawyers, physicians, dentists, accountants or engineers, the nature of his activity is recognized as something beyond the ordinary commercial seller of goods or services—an activity beyond the pale of the act under consideration.
>
> [*Id.* at 379, 358 *A.*2d 473.]

The court went on:

> Certainly no one would argue that a member of any of the learned professions is subject to the provisions of the Consumer Fraud Act despite the fact that he renders "services" to the public. And although the literal language may be construed to include professional services, it would be ludicrous to construe the legislation with that broad a sweep in view of the fact that the nature of the services does not fall into the category of consumerism.
>
> [*Ibid.*]

Thereafter in *Vort v. Hollander,* 257 *N.J.Super.* 56, 607 *A.*2d 1339 (App.Div.), *certif. denied,* 130 *N.J.* 599, 617 *A.*2d 1221 (1992), the Appellate Division ruled that a dispute involving a lawyer's

fee, including allegations of over-billing in contravention of a fee-cap, was not subject to the CFA. *Id.* at 62, 607 *A*.2d 1339. In deciding as it did, the court made the point that the Legislature had amended the CFA to add real estate sales, but had remained silent in the face of *Neveroski's* characterization of the applicability of the CFA to learned professionals as "ludicrous." *Ibid.*

Since then, no reported New Jersey case has applied the CFA to a representation involving the rendering of services by a learned professional. The Appellate Division here over-read *Blatterfein* in reaching its conclusion to the contrary. In *Blatterfein,* an architect was held subject to the CFA for misrepresentations he made about building materials as part of a real estate merchandising scheme. In other words, although he "happened" to be an architect, he was not functioning in that capacity when he made false representations to induce the purchase of a house. Rather, he was operating as a real estate sales person and that is what subjected him to the CFA. *See also Gilmore v. Berg,* 761 *F.Supp.* 358 (D.N.J.1991) (concluding that lawyer and accountant are answerable under CFA for efforts to "sell" real estate).

Nothing in *Lemelledo* suggests a contrary conclusion. There, in addressing loan-packing, we held that the mere existence of an alternative regulatory scheme by the Department of Banking and Insurance, did not automatically eliminate the applicability of the CFA. Instead, we held that a direct conflict between the schemes would be required in order to conclude that the Legislature did not intend the CFA to apply. *Lemelledo, supra,* 150 *N.J.* at 270, 696 *A*.2d 546. *Lemelledo* would be dispositive here if the issue presented was whether the separate regulatory scheme governing physicians preempts the application of the CFA. It is entirely irrelevant to the threshold question of whether the CFA applies to learned professionals in the first instance.

Thus, today, forty years after the CFA was enacted, our jurisprudence continues to identify learned professionals as beyond the reach of the Act so long as they are operating in their

professional capacities. The Legislature is presumed to be aware of that judicial view.

> In construing a statute it is to be assumed that the Legislature is thoroughly conversant with its own legislation and the judicial construction placed thereon. *Barringer v. Miele,* 6 *N.J.* 139, 144, 77 *A.*2d 895 (1951). And the construction of a statute by the courts, supported by long acquiescence on the part of the Legislature or by continued use of the same language or failure to amend the statute, is evidence that such construction is in accord with the legislative intent. *Egan v. Erie R. Co.,* 29 *N.J.* 243, 250, 148 *A.*2d 830 (1959).
>
> [*Quaremba v. Allan,* 67 *N.J.* 1, 14, 334 *A.*2d 321 (1975) ]

■ We therefore must assume that the Legislature approves of the consistent judicial interpretation of the CFA that has been extant for four decades. Under that interpretation, advertisements by learned professionals in respect of the rendering of professional services are insulated from the CFA but subject to comprehensive regulation by the relevant regulatory bodies and to any common-law remedies that otherwise may apply. We consider ourselves bound by that Legislative acquiescence. If we are incorrect in our assumption, we would expect the legislature to take action to amend the statute.

■ That said, because Dr. Dello Russo's advertising representations were made in his professional capacity regarding his professional services, the trial court correctly dismissed the CFA claim against him. That is not to suggest that Dr. Dello Russo would be insulated from the restraints of the CFA if he acted outside his professional capacity. Like the architect in *Blatterfein,* if Dr. Dello Russo were to engage in the merchandising of a golf course, a vacation time-share or a medical office building, he would be subject, as all merchandisers are, to the CFA.

The judgment of the Appellate Division is reversed. The case is remanded for disposition of the remaining issues.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI and WALLACE—6.

*Opposed*—None.