954 A.2d 499 (2008)
402 N.J. Super. 346
Margaret LEE, Plaintiff-Appellant,
v.
FIRST UNION NATIONAL BANK, Wachovia Bank, N.A., First Union Brokerage Services, Inc., and Gregory Mack, Defendants-Respondents.
No. A-1517-06T2.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 2007.
Decided August 27, 2008.
*500 Henry Gurshman, Metuchen, argued the cause for appellant.
John E. MacDonald, argued the cause for respondents (Stark & Stark, Lawrenceville, and Beverly Jo Slaughter of the Virginia bar, admitted pro hac vice, attorneys; Mr. MacDonald, of counsel; Jason A. Storipan, Murray Hill, Ms. Slaughter, and Mr. MacDonald, on the brief).
Before Judges STERN, COLLESTER and C.L. MINIMAN.
The opinion of the court was delivered by
COLLESTER, J.A.D.
Plaintiff Margaret M. Lee appeals from an order granting summary judgment and dismissing her complaint against defendant's First Union National Bank, now Wachovia Bank, N.A., First Union Brokerage Services, Inc. and Gregory Mack. We reverse.
On May 12, 2006, plaintiff filed her complaint against defendants. The first count alleged that defendant Mack induced plaintiff to give him $2,000 in cash for the purchase of certain securities and that defendants jointly and severally misapplied those funds when Mack took the $2,000 for his own use and benefit. The second count alleged that plaintiff suffered economic loss as a result of the aforesaid misappropriation of funds, which constituted an unconscionable commercial practice by the defendants in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -106.
In lieu of filing an answer, defendants moved for summary judgment on both counts. The motion judge granted summary judgment on the second count, holding that the Consumer Fraud Act (CFA) *501 was inapplicable to the sale of securities. The first count was dismissed on the ground that it was barred by the two-year statute of limitations under the New Jersey Uniform Securities Law, N.J.S.A. 49:3-47 to -76. We reverse on both grounds.
Our scope of review of an order granting summary judgment requires us to view the competent evidential materials in the light most favorable to the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). The facts asserted by plaintiff are as follows. In the spring of 2000, plaintiff received $12,000 as a settlement in a personal injury action. She deposited $5,000 of the proceeds in her existing checking account with First Union National[1] and took the remaining $7,000 in cash. While she was at the Elizabeth branch of First Union National, she inquired about purchasing securities and was directed by a woman named Cora to speak with defendant, Gregory Mack, at the Hillside branch. It is undisputed that at that time Mack was an employee of First Union National as well as First Union Brokerage Securities, Inc. as a registered representative. According to plaintiff, Mack recommended Evergreen Omega, a mutual fund, and at his suggestion, plaintiff purchased 61.52 shares for the price of $2,000. She paid $2,000 in cash to Mack for the purchase. On the same date, May 22, 2000, plaintiff opened a brokerage account with First Union Brokerage Services and she signed a mutual fund disclosure statement indicating she understood the prospectus for Evergreen Omega fund, she paid $2,000 in cash to Mack for the purchase, but he did not deposit that sum into either of plaintiff's accounts. According to bank records, plaintiff made withdrawals from her checking account, bringing the balance down to $591 at the time of settlement of the mutual fund purchase on May 25, 2000. With no funds in the brokerage account, the bank applied $500 from plaintiff's checking account as partial payment for the purchase and liquidated $1,500 of the Omega fund units from her brokerage account to cover the remainder due for the purchase, thus reducing the trade amount from $2,000 to $500.
Plaintiff claims that the shortfalls in her accounts were the result of Mack's failure to deposit the $2,000 he received in cash into either of plaintiff's accounts for the purchase of the fund shares. She alleges she spoke with Mack, and he admitted that he had not deposited the $2,000 to cover the cost of the mutual fund purchase. She said Mack told her he would give her $1,500 if she agreed not to tell his supervisor what he had done. Plaintiff refused to accept less than the entire amount of $2,000 and, after Mack failed to return the money, she initiated suit.
As to the claimed applicability of the CFA to the misappropriation of $2,000 as alleged in the second count of plaintiff's complaint, plaintiff relies upon N.J.S.A. 56:8-1, which defines the terms of the CFA.
(a) The term "advertisement" shall include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan;
. . . .

*502 (c) The term "merchandise" shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale.
The CFA is broadly worded to protect consumers from a wide variety of deceptive practices in connection with the sale of merchandise. Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 264, 696 A.2d 546 (1997) ("The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud."). "Services" are among the offerings contained in the CFA's definition of "merchandise." N.J.S.A. 56:8-1(c); Hampton Hosp. v. Bresan, 288 N.J.Super. 372, 378, 672 A.2d 725 (App.Div.) ("The legislature defined `merchandise' as including not only goods, but services as well."), certif. denied, 144 N.J. 588, 677 A.2d 760 (1996); see Quigley v. Esquire Deposition Serv., 400 N.J.Super. 494, 948 A.2d 665 (App.Div.2008) (shorthand reporting services qualify as "merchandise" under the CFA). This is qualified by the exception that the CFA does not place additional restrictions on services performed by "learned professionals" already subject to extensive regulation. Macedo v. Dello Russo, 178 N.J. 340, 345, 840 A.2d 238 (2004); see Vort v. Hollander, 257 N.J.Super. 56, 61, 607 A.2d 1339 (App.Div.1992) (attorneys' services are not covered by CFA).
New Jersey courts have construed the CFA to protect customers against deceptions in the financial industry, including those pertaining to loans and consumer credit. Lemelledo, supra, 150 N.J. at 265, 696 A.2d 546; Assocs. Home Equity Servs., Inc. v. Troup, 343 N.J.Super. 254, 278, 778 A.2d 529 (App.Div.2001). However, securities are exempt from the definition of "merchandise" because in the legislative history the term "securities" was deleted from the final version of the 1976 amendment. Stella v. Dean Witter Reynolds, Inc., 241 N.J.Super. 55, 75, 574 A.2d 468 (App.Div.) (quoting Neveroski v. Blair, 141 N.J.Super. 365, 377, 358 A.2d 473 (App.Div.1976)), certif. denied, 122 N.J. 418, 585 A.2d 412 (1990). In Stella, we held that a defendant who misappropriated the plaintiff's money by selling him shares in a fictitious investment was not liable to him under the CFA because the defendant's misrepresentation specifically related to the security and not to a sale of "merchandise" as defined by the legislature. Id. at 75-76, 574 A.2d 468.
The transaction at issue in this appeal, however, is not exempt from the CFA's prohibition on deceptive sales practices because the claim is that Mack misrepresented the performance of his services in depositing the $2,000 to cover the settlement of the mutual fund purchase on May 25, 2008  not the nature or existence of the mutual fund which was in fact purchased for her account. There is no suggestion that plaintiff chose to buy the securities based on misinformation about the nature of the investment. Rather, according to plaintiff, the security was merely incidental to Mack's misappropriation of the $2,000 in cash she gave him to cover the settlement of the purchase three days later. Because Mack's occupation is not among the class of "learned professionals" exempt from the CFA, his services constitute "merchandise." Therefore, his alleged conduct would be prohibited by N.J.S.A. 56:8-2, which bars "deception, fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale or advertisement of . . . merchandise."
Moreover, we disagree with the motion judge that the statute of limitations under the Uniform Securities Law (1997) bars plaintiff's common law claims. N.J.S.A. 49:3-71(g) provides: "No person *503 may bring an action under this section more than two years after the contract of sale . . . or more than two years after the time when the person aggrieved knew or should have known of the existence of his cause of action, whichever is later." The court stated that a letter written by the plaintiff on June 2, 2000, confirmed the date when plaintiff knew or should have known she had a cause of action, and since her complaint was not filed until May 12, 2006, it was well in excess of the two-year limitation.
Plaintiff, however, did not plead a violation of the Uniform Securities Law (1997) and defendant did not even attempt to establish that Evergreen Omega was not exempt from the application of this statutory scheme under any of the numerous exemptions provided by N.J.S.A. 49:3-50(a) and -50(b). Even if Evergreen Omega was not so exempt, the gravamen of this count of the complaint concerns the unlawful "taking, detaining, or converting" of personal property, which is subject to the six-year statute of limitations of N.J.S.A. 2A:14-1. Plaintiff may prosecute her common law claims because the Uniform Securities Law (1997) does not state that it provides an exclusive remedy. See N.J.S.A. 49:3-71. Because plaintiff filed her common law complaint within six years of her claim, the court erred in dismissing this count as well.
Finally, defendant asserts that since plaintiff did not contest the applicability of the Blue Sky Act limitation, it cannot be contested on appeal. We disagree. In this instance we deal with a question of law governing the dismissal of a civil complaint, which is always a proper subject for our consideration.
Reversed.
NOTES
[1] A letter from defendant First Union Brokerage Services, Inc. states that $2,000 was deposited into plaintiff's account.