43 A.3d 1197 (2012)
426 N.J. Super. 143
MANAHAWKIN CONVALESCENT, Plaintiff,
v.
Frances O'NEILL, Defendant, and
Frances O'Neill in her capacity as Executrix of the Estate of Elise Hopkins, Third-Party Plaintiff-Appellant,
v.
Broadway Health Care Management, LLC; M & A/Comprehensive Health Care Management Systems, LLC; M.R. of Manahawkin, LLC; and H.W. of Manahawkin, LLC d/b/a Manahawkin Convalescent Center, Third-Party Defendants-Respondents.
No. A-0841-11T4
Superior Court of New Jersey, Appellate Division.
Argued March 27, 2012.
Decided May 31, 2012.
*1199 Sander D. Friedman argued the cause for appellant (Law Office of Sander D. Friedman, attorneys; Mr. Friedman, on the brief).
Tracy L. Burnley, Cherry Hill, argued the cause for respondents (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Ms. Burnley, on the brief).
Before Judges BAXTER, MAVEN and CARCHMAN.
The opinion of the court was delivered by
MAVEN, J.S.C. (temporarily assigned).
Third-party plaintiff Frances O'Neill (plaintiff), in her capacity as Executrix of the Estate of Elise Hopkins,[1] appeals from the September 2, 2011 order granting summary judgment in favor of third-party defendants Manahawkin Convalescent Center, Broadway Health Care Management, LLC, M & A/Comprehensive Health Care Management Systems, LLC, M.R. of Manahawkin, LLC, and H.W. of Manahawkin, LLC d/b/a Manahawkin Convalescent Center (collectively defendant); denying summary judgment of her claims against defendant; and dismissing her amended counterclaim and amended third-party complaint, with prejudice. We affirm.

I.
The issues presented in this case are whether the Rehabilitation and Nursing Home Admission Agreement (Admission Agreement) required to be signed prior to plaintiff's mother, Elise Hopkins' (Ms. Hopkins) admission to Manahawkin Convalescent Center (Manahawkin) violated the Nursing Home Act (NHA), N.J.S.A. 30:13-1 to -17, the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, and the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20.
The facts that give rise to this dispute are not complicated. In February 2007, plaintiff's mother, who suffered from Alzheimer's disease, became a patient at Manahawkin, a nursing home. Prior to her admission, plaintiff signed an Admission Agreement designating herself as the "Responsible Party"[2] and assigning the direct payment of her mother's Medicaid[3] benefits to Manahawkin for services rendered. Plaintiff did not agree to be the private pay guarantor for her mother's expenses and declined to have her mother's social security benefits deposited directly to the nursing home. In so doing, plaintiff assumed the responsibility of making monthly payments from her mother's financial resources to Manahawkin for the balance of monies due. During Ms. Hopkins' stay at Manahawkin, plaintiff made the payments until her mother's death in June 2008. Plaintiff disputed an outstanding balance due of $878.20 for the final month of care, for which defendant sought payment from plaintiff. After several attempts *1200 to collect payment, a special civil part complaint was filed to compel plaintiff, as the responsible party, to pay the outstanding debt.[4] Plaintiff filed an answer, a counterclaim seeking class action certification and a third-party complaint alleging, among other things, the aforementioned statutory violations. Specifically, plaintiff contended the Admission Agreement required a third party to incur personal financial liability for Medicaid and Medicare patients contrary to the NHA and TCCWNA; and that the Admission Agreement, as an unconscionable consumer contract, violated the CFA.
In opposition to the motion for summary judgment, plaintiff argued that the Admission Agreement compelled the responsible party to obligate his or her personal financial assets for the expenses of a resident. Defendant countered that the language of the Admission Agreement and the Residents Rights form clearly state that a nursing home is not permitted to require a third-party guarantee of payment.
The relevant language from the Admissions Agreement, under the "Failure to Pay" section states:
The Facility shall submit bills to Resident/Responsible Party for all services not covered by Medicare, Medicaid or other third parties. Resident/Responsible Party shall pay such bills within ten (10) days of receipt. In the event that any such bills are not paid within ten (10) days following receipt, in addition to any other remedies available by law or under this agreement, the Resident/Responsible Party shall pay a late charge of $5.00 per day computed from the 5th day following receipt and continuing until both the original billed amount and the late charges are fully paid. If no contact has been made by the Resident/Responsible Party in relation to paying these amounts within 15 days of receipt of the original bill, the process will begin to notify Resident/Responsible Party of intent to discharge due to nonpayment within 45 days.
Should Facility retain an attorney to enforce any provision of this Agreement, Resident/Responsible Party agrees to pay reasonable attorney's fees, collection costs and other costs of litigation. Resident and Responsible Party hereby agree to allow the Facility to place a lien on any owned properties in the event there is a financial obligation to the Facility that remains unpaid for a period of 60 days or more.
The Resident Rights form, provided by defendant and signed by plaintiff, details the admission policy related to Medicaid patients and states:
The facility must not require a third party guarantee of payment to the facility as a condition of admission, or expedited admission, or continued stay at the facility. However, the facility may require an individual who has legal access to a resident's income or resources available to pay for facility care to sign a contract, without incurring financial liability, to provide facility payment from the resident's income or resources.
The court also reviewed the collection letters and found that "[t]here's nothing in the face of" the dunning letter, sent March 26, 2009 by David Goldberg, "that would indicate that Ms. O'Neill is required to pay the money from her own funds." The collection letter sent to plaintiff reads, in relevant part:
The facility has advised us that you are the responsible party for the above resident, *1201 which means that you have the obligation to pay any debts owed by this resident to the facility.
Failure to do so will leave us no choice but to proceed with legal action against you as the responsible party. We will sue for the monies due with accrued interest plus court costs and legal fees. Further, you will be reported to the credit rating agencies.
Although the court found that the Admission Agreement stated that "[r]esponsible parties do become liable to the resident facility if they fail to ... act in the best interest of the resident to make sure that [the resident's Medicaid] funds are quickly and expeditiously transferred for the payment of care which is being provided to them," the court ultimately determined that neither the contract nor the representations made on behalf of defendant indicated that plaintiff's personal assets would be placed in jeopardy. The court ruled that there was
no question that Manahawkin sought to recover moneys that it deemed it was due and owing from the resident's income or resources. The only vehicle to access the resident's income or resources that Manahawkin felt it was due as a result of the care provided to Ms. Hopkins in June was to notify Ms. O'Neill, as the responsible party, that the moneys were due and owing. The fact that it captioned the complaint in less than an articulate fashion, that it should have identified the defendant as the Estate of Elise Hopkins rather than as Ms. O'Neill, in the Court's mind, is a matter of semantics. Ms. O'Neill knew that she was being contacted because she was a responsible party, and as the responsible party, she was obligated to assist the facility in collecting the moneys that were due and owing to the facility from the resident's income.
The trial court granted summary judgment in favor of defendant, and dismissed plaintiff's counterclaim and third-party complaint with prejudice. This appeal follows.

II.
Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c). We review the grant of summary judgment using the same standard as the motion judge. Lee v. First Union Nat'l Bank, 199 N.J. 251, 254, 971 A.2d 1054 (2009). We must determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the nonmoving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
On appeal, plaintiff does not raise issues of fact, but rather disputes the court's interpretation of the Admission Agreement and the court's legal conclusions. Plaintiff argues that the trial court misinterpreted the Admission Agreement and the basis of her counterclaim and third-party complaint. Alleging that all parties acknowledged and agreed that plaintiff was the responsible party and that defendant brought suit against plaintiff as the responsible party, plaintiff contends the trial court erred and abused its discretion when it erroneously found that: (1) the "responsible party" was not personally liable; (2) the caption of the special civil part complaint naming "Frances O'Neill" rather than the "Estate of Elise Hopkins" was a "matter of semantics"; and (3) plaintiff knew that she was contacted and sued as the responsible party. The essence of plaintiff's position is that defendant's suit *1202 against plaintiff as the responsible party equates to defendant holding plaintiff personally financially liable for her mother's debt in contravention to NHA and federal laws regulating nursing facilities.[5] We disagree with plaintiff.
"The interpretation of a contract is ordinarily a legal question for the court and may be decided on summary judgment unless `there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation....'" Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J.Super. 514, 528, 962 A.2d 591 (App.Div.2009) (quoting Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J.Super. 495, 502, 762 A.2d 1057 (App.Div.2000)). When interpreting a contract, a court must attempt to ascertain "the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Ibid. (citations omitted). Therefore, the court must determine whether a genuine issue of material fact exists regarding the parties' intentions. Ibid.
The trial court's opinion thoroughly addresses plaintiff's claims. The trial court compared the contract language to the controlling federal laws and found that the language of the Admission Agreement complies with the applicable provisions concerning third party guarantees. The federal law provides that a nursing home shall "not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility." 42 U.S.C.A. § 1396r(c)(5)(A)(ii). That statute also provides that the section shall not be interpreted as "preventing a facility from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care." 42 U.S.C.A. § 1396r(c)(5)(B)(ii).
The trial court also reviewed New Jersey law that provides that nursing home facilities are prohibited from requiring a third party guarantee of payment as a condition of admission where the prospective resident is a Medicare or Medicaid recipient. N.J.S.A. 30:13-3.1a(2).[6] Where an individual has "legal access to a resident's income or resources available to pay for facility care pursuant to a durable power of attorney ..., the facility may require the individual to sign a contract to provide payment to the facility from the resident's income or resources without incurring personal financial liability." Ibid.
The language of the federal and state laws makes it clear that defendant could not have legally required plaintiff to use her own assets to satisfy her mother's financial obligations. Although the Admission Agreement provided a "private pay" guarantor option,[7] plaintiff did not sign that section of the Admission Agreement, thereby declining to assume personal liability for her mother's debt. Finally, the *1203 court found that the effort to collect the outstanding debt from plaintiff, as the responsible party, was not unlawful.
We concur with the opinion of the trial court that there was no implicit or explicit action taken by defendant to hold plaintiff personally financially liable for her mother's debt for care received at Manahawkin. We conclude that the Admission Agreement is a lawful contract, that defendant's collection effort did not violate state or federal law, and that the grant of summary judgment was not error.

III.
In light of those conclusions, plaintiff's claim that the Admission Agreement violates the CFA must fail. The New Jersey CFA prohibits:
[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby....
[N.J.S.A. 56:8-2]
To sustain a claim of violation of the CFA, plaintiff must prove three elements: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557, 964 A.2d 741 (2009) (citations omitted). The Court noted that "[e]ach of the elements of the prima facie case is found within the plain language of the statute itself; each is, without any question, a prerequisite to suit." Ibid. Plaintiff cannot satisfy the first indispensable element, as we have concluded that the Admission Agreement is lawful.
We also reject plaintiff's assertion of a CFA violation in light of the learned professional exception that precludes its application to Manahawkin. The "learned professional" exception, established during forty years of the law's jurisprudence, "continues to identify learned professionals as beyond the reach of the Act so long as they are operating in their professional capacities." Macedo v. Dello Russo, 178 N.J. 340, 345-46, 840 A.2d 238 (2004). The initial rationale for the exception is premised on the nature of the professional's activity as "something beyond the ordinary commercial seller of goods or services." Neveroski v. Blair, 141 N.J.Super. 365, 379, 358 A.2d 473 (App.Div.1976). The learned professional exception has been extended to recognize that "uniform regulation of an occupation, where such regulation exists, could conflict with regulation under the CFA." Lee, supra, 199 N.J. at 264, 971 A.2d 1054 (citing Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 272, 390 A.2d 566 (1978) where the Court expressed a reluctance to permit a situation "where separate state agencies would have the right to exercise concurrent jurisdiction and control over Elizabethtown's billings, with a real possibility of conflicting determinations, rulings and regulations affecting the identical subject matter").
As the learned professional exception evolved, we held that hospital services do not fall within the purview of the CFA as hospitals in New Jersey are strongly regulated. Hampton Hosp. v. Bresan, 288 N.J.Super. 372, 383, 672 A.2d 725 (App. Div.), certif. denied, 144 N.J. 588, 677 A.2d 760 (1996). In Hampton, the hospital sued the defendants in the special civil part to collect $1,504.68 for services rendered *1204 to their son. Id. at 374, 672 A.2d 725. Defendant filed a counterclaim under the CFA alleging unlawful or unethical medical practices. Id. at 376, 672 A.2d 725. The trial court granted summary judgment in favor of plaintiff. Id. at 374, 672 A.2d 725. On appeal, as a case of first impression, we drew upon precedent established in other jurisdictions and found persuasive Illinois decisional law interpreting its CFA. We ultimately held that there was "no purpose to a requirement that hospital services be within the purview of the [CFA] when those same services fall within the purview of the Department of Health." Id. at 383, 672 A.2d 725.
Like hospitals, nursing home facilities, particularly those accepting patients who receive federally funded medical assistance, Medicare and Medicaid, are strictly regulated. The New Jersey Department of Health and Senior Services is authorized to maintain an action in the name of the State to enforce the provisions of the NHA and any rules or regulations promulgated pursuant to the NHA. N.J.S.A. 30:13-8a. Any plaintiff who prevails shall be entitled to treble damages in any action to enforce the provision of N.J.S.A. 30:13-3.1, the provision at issue in this case. N.J.S.A. 30:13-8b. Applying the CFA to Manahawkin, which, like Hampton Hospital, is subject to state regulation, would create an impermissible circumstance where divergent determinations and penalties for the same subject matter may occur. Daaleman, supra, 77 N.J. at 272, 390 A.2d 566. On that basis, we conclude that defendant's nursing home does not fall within the purview of CFA.
The question whether a hospital's admissions contract and collection methods violated the New Jersey CFA was addressed in DiCarlo v. St. Mary's Hosp., 530 F.3d 255 (3d Cir.2008). The federal court examined New Jersey's learned professional exception to determine if collection efforts by a hospital are "services" and thereby excluded from prosecution under CFA. In DiCarlo, the plaintiff patient was indigent, had no health insurance and did not qualify for Medicare or Medicaid. At the time of his admission, he signed a contract guaranteeing payment of unspecified charges that read, in relevant part, "I also guarantee payment of all charges and collection costs for services rendered...." Id. at 259. The defendant billed the plaintiff for the services rendered, in accordance with the hospital's index of prices for services, supplies, and medications. Ibid. Alleging that the agreement was unconscionable and the charges excessive, unfair and unreasonable, the plaintiff brought suit against the defendants claiming, among other things, violation of the CFA. Id. at 260.
New Jersey courts have held that the services rendered by professionals are not covered by the CFA. Macedo, supra, 178 N.J. at 345, 840 A.2d 238. The Third Circuit concluded that the defendant hospital's billing practices were part of the professional services exception to the CFA and such practices were not unconscionable. DiCarlo, supra, 530 F.3d at 260. Although we are not bound by the opinions of lower federal courts, including the Circuit Court of Appeals, Ryan v. American Honda Motor Co., Inc., 186 N.J. 431, 436, 896 A.2d 454 (2006); see Pressler & Verniero, Current N.J. Court Rules, comment 3.5 on R. 1:36 (2011), we, nonetheless, find the opinion rendered in DiCarlo persuasive.
Here, defendant was entitled to seek payment for the outstanding debt from plaintiff, the responsible party, as authorized by federal and state law. The manner in which defendant pursued its financial interest was deemed lawful. Like St. Mary's Hospital in DiCarlo, defendant's billing and collection practices are considered *1205 part of the services rendered and, as such, fall within the "learned professional" exception of the CFA.
Affirmed.
NOTES
[1] The complaint captioned Manahawkin Convalescent v. Frances O'Neill was dismissed. This appeal pertains to the third-party action, in which Frances O'Neill is the plaintiff, in her representative capacity.
[2] The Admission Agreement defines "Responsible Party" as the person "acting on behalf of the Resident as his or her representative and guardian in fact, or one who has been appointed by the Court as legal guardian."
[3] Medicaid is an intensely regulated, needs-based program, funded jointly by the federal government and the states. H.K. v. State, 184 N.J. 367, 380, 877 A.2d 1218 (2005).
[4] The collection letters and the special civil part complaint were signed by David Goldberg, a representative of Broadway Healthcare Management, LLC, who had a contract to manage the financial, billing and collection services for Manahawkin.
[5] 42 U.S.C.A. § 1396r(c)(5)(A)(ii) and (5)(B)(ii).
[6] The NHA was amended in September 1997 to ensure that the language was consistent with federal law by clarifying that the provisions of Section 3 shall only apply to those distinct parts of a nursing home certified to participate in the Medicare or Medicaid program.
[7] The Private Pay Guarantor option provides: The undersigned hereby acknowledges and agrees to the undertakings of the Responsible Party as set forth hereinabove and further agrees to provide, from his/her own funds, and guarantees payment of all financial obligations of the Resident, including but not limited to the per diem rate and other charges incurred by the Resident, under this Agreement.