RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1622-16T2

ATLANTIC AMBULANCE CORPORATION,

 Plaintiff-Respondent,

v. APPROVED FOR PUBLICATION

JOHN G. CULLUM and MARY CLARE June 29, 2017
CULLUM, APPELLATE DIVISION

 Defendants-Appellants.
___________________________

ATLANTIC AMBULANCE CORPORATION,

 Plaintiff-Respondent,

v.

HALA HITTI and ANTOINE HITTI,

 Defendants-Appellants.

_____________________________________

 Argued May 23, 2017 - Decided June 29, 2017

 Before Judges Reisner, Koblitz and Mayer.

 On appeal from an interlocutory order of the
 Superior Court of New Jersey, Law Division,
 Morris County, Docket Nos. L-264-12 and
 L-2097-12.

 Robert W. Mauriello, Jr., argued the cause for
 appellants (Graham Curtin, P.A., attorneys;
 Kelley J. Hastie and Mr. Mauriello, on the
 briefs).
 James W. Brown (Skadden, Arps, Slate, Meagher
 & Flom) of the New York bar, admitted pro hac
 vice, argued the cause for respondent (Schenck
 Price Smith & King, LLP and Mr. Brown,
 attorneys; Lauren E. Aguiar (Skadden, Arps,
 Slate, Meagher & Flom) of the New York bar,
 admitted pro hac vice, Mr. Brown and Peter A.
 Marra, on the brief).

 The opinion of the court was delivered by

MAYER, J.S.C. (temporarily assigned)

 Appellants John G. Cullum and Mary Clare Cullum (Cullum) and

Hala Hitti and Antoine Hitti (Hitti)1 were granted leave to appeal

denial of their motion for class certification. We affirm in part

and remand in part.

 In reaching this decision, we hold that ambulance service

providers are not subject to consumer fraud claims under the

"learned professional" exception because ambulance services are

comprehensively regulated by a State agency. We also hold that

the reasonableness of rates charged for ambulance services is a

policy matter to be addressed by the Legislature and agencies

within the Executive branch of government. We further determine

that consumers are not required to pay a defendant's bill for

allegedly overpriced services, in order to establish an

ascertainable loss under the Consumer Fraud Act.

1
 Because Hitti and Cullum were defendants and counterclaimants,
for simplicity we refer to them as "appellants" although we usually
refer to parties by their status in the trial court.

 2 A-1622-16T2
 We briefly recite the relevant procedural history. Atlantic

Ambulance Corp. (Atlantic) filed complaints in the Special Civil

Part against Cullum and Hitti seeking payment for ambulance

services. Cullum and Hitti filed answers and counterclaims,

alleging that Atlantic overbilled for ambulance services in

violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20 (CFA).

The counterclaims also asserted causes of action against Atlantic

for negligence, common law fraud, breach of contract and unjust

enrichment.2 Appellants also sought class certification on behalf

of themselves as class representatives and on behalf of all

proposed class members who were overcharged for ambulance services

during a six-year period. The Cullum and Hitti matters were

transferred from the Special Civil Part to the Law Division and

were consolidated. After five years of discovery, appellants

filed a motion seeking class certification.

 The facts giving rise to appellants' overbilling claims

against Atlantic are undisputed. Cullum and Hitti initially

alleged that they did not receive services from Atlantic and,

therefore, the fees charged by Atlantic for services were improper

and/or excessive. However, during oral argument on the class

2
 On appeal, appellants are pursuing their CFA and breach of
"quasi-contract" claims only.

 3 A-1622-16T2
certification motion, counsel clarified that Cullum and Hitti

received services, but claimed the bills they received were

unconscionably high. The dispute focused on Atlantic's provision

of ALS services, which are divided into three categories: ALS

Assessment, ALS-1 and ALS-2. Different services are provided to

patients for each ALS category, ranging from a basic physical

examination and electrocardiogram readings to more complex medical

treatments.

 The amount billed to patients receiving ambulance services

depends on the category of the support rendered. For ALS services,

Atlantic charged the following: $1500 for an ALS Assessment, plus

a mileage fee; $1750 for ALS-1 services, plus a mileage fee; and

$2300 for ALS-2 services, plus a mileage fee. Appellants

challenged Atlantic's formulation of the billing rates for ALS

services. They claimed that Atlantic's fees for ALS services

should be itemized, specifying the amount charged for each service,

rather than bundled. Appellants alleged that Atlantic's uniform

flat rates were excessive and disproportionate to the

reimbursement rates assessed by insurance providers for similar

services.

 In Cullum's case, he passed out at his gym and Atlantic was

called to provide ambulance services. Other than blood pressure

monitoring, Cullum denied receiving any medical services from

 4 A-1622-16T2
Atlantic. Cullum's bill from Atlantic was $1750, plus a mileage

fee for transporting him to the hospital. Cullum's health

insurance provider paid a portion of Atlantic's bill, and he was

responsible for payment of the outstanding balance of $1459.20.

 In Hitti's case, she fainted in her home and Atlantic

performed an ALS Assessment. Hitti declined transportation to the

hospital but was charged $14 for transport of one mile. Hitti's

bill was $1500, plus the mileage fee. Hitti's health insurance

provider declined to pay Atlantic's bill due to a purported billing

code error.

 Appellants sought class certification on behalf of themselves

and approximately 36,000 individuals who were allegedly overbilled

by Atlantic.3 Appellants claimed that their cause of action

satisfied the requirements for class certification. See R. 4:32-

1(a); see also Muise v. GPU, Inc., 371 N.J. Super. 13, 30 (App.

Div. 2004) (the requirements are numerosity, commonality,

typicality and adequacy). Appellants also argued that they met

the requirements of Rule 4:32-1(b)(3) by raising "questions of law

3
 In the six-year period, appellants contend there were
approximately 10,000 individuals who were charged a $14 mileage
fee despite not being transported to a hospital (the non-
transported individuals are identified as the "Hitti class") and
26,000 individuals who were transported to a hospital but were
charged an exorbitant bundled rate for ambulance services (these
individuals are identified as the "Cullum class").

 5 A-1622-16T2
or fact common to the members of the class [that] predominate over

any questions affecting only individual members, and that a class

action is superior to other available methods for fair and

efficient adjudication of the controversy." R. 4:32-1(b)(3); see

also Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 106-07 (2007).

 Appellants maintained their claims were common, typical and

adequate with respect to the claims of the proposed class members

because all were victims of Atlantic's unlawful billing practices

and unconscionable rates in violation of the CFA.4 Appellants

contended that Atlantic had a duty to charge a reasonable fee for

services and breached that duty. For the Hitti class, the issue

was Atlantic's $14 mileage fee for patients not transported to a

hospital.5 For the Cullum class, the issue was the reasonableness

of the fee charged by Atlantic for ALS-1 and ALS-2 services.

Appellants reasoned that the time, energy and cost to pursue

individual lawsuits against Atlantic would make it financially

unfeasible for aggrieved class members to pursue their claims in

the absence of class certification.

4
 Atlantic did not dispute the numerosity prong for class
certification.

5
 During this litigation, Atlantic conceded that it was improper
to charge a $14 mileage fee for individuals who were not
transported to a hospital.

 6 A-1622-16T2
 Atlantic countered that appellants' claims were not typical

because proof of their claims would not prove the claims of the

proposed class members. Atlantic highlighted the dissimilar aid

and assistance rendered to individuals who received ALS-1 services

and ALS-2 services, and noted that neither Cullum nor Hitti

received ALS-2 services. Atlantic claimed the reasonableness of

the fees charged for the services required individual adjudication

on a patient-by-patient basis and, therefore, was not amenable to

class certification. Further, Atlantic contended that neither

Cullum nor Hitti suffered damages under a breach of contract theory

or CFA violation claim because: (1) appellants denied receiving

any services from Atlantic, and (2) even if they conceded receipt

of services, appellants did not pay Atlantic's bill to establish

an ascertainable loss under the CFA.

 In deciding the motion, the judge found that appellants'

claims were not common, not typical and not in alignment with the

claims of proposed class members because appellants did not receive

ALS-2 services and did not pay for Atlantic's services. The judge

ruled that appellants did not suffer an ascertainable loss under

the CFA because Cullum and Hitti failed to pay Atlantic's bill.

The judge expressly rejected appellants' argument that an

excessive bill from Atlantic was sufficient to prove an

ascertainable loss.

 7 A-1622-16T2
 On appeal, Cullum and Hitti argue the judge erred in denying

class certification based upon his determination that they were

unable to prove an ascertainable loss to sustain a CFA claim. We

conclude that the judge's denial of class certification on that

basis was flawed because appellants were not required to have paid

Atlantic's bill to demonstrate an ascertainable loss.

 The certainty implicit in the concept of an
 "ascertainable" loss is that it is
 quantifiable or measurable. Moreover, it need
 not yet have been experienced as an out-of-
 pocket loss to the plaintiff. An "estimate
 of damages, calculated within a reasonable
 degree of certainty" will suffice to
 demonstrate an ascertainable loss.

 [Thiedemann v. Mercedes-Benz USA, LLC, 183
 N.J. 234, 248-49 (2005) (quoting Cox v. Sears
 Roebuck & Co., 138 N.J. 2, 22-23 (1994)).]

 In the seminal CFA case, Cox v. Sears Roebuck & Company, the

Supreme Court held that non-payment did not preclude the plaintiff

from establishing an ascertainable loss. Cox, supra, 138 N.J. at

22 ("[T]o demonstrate a loss, a victim must simply supply an

estimate of damages, calculated within a reasonable degree of

certainty. The victim is not required actually to spend the money

for the repairs before becoming entitled to press a claim.").

 While we agree with denial of class certification on

appellants' CFA claim, we do so for reasons other than those

expressed by the motion judge. We affirm or reverse judgments and

 8 A-1622-16T2
orders, not reasons. Isko v. Planning Bd. of Twp. of Livingston,

51 N.J. 162, 175 (1968); Walker v. Briarwood Condo Ass'n, 274 N.J.

Super. 422, 426 (App. Div. 1994). A correct result, even if

grounded on an erroneous basis in fact or in law, will not be

overturned on appeal. See GNOC, Corp. v. Dir., Div. of Taxation,

328 N.J. Super. 467, 474 (App. Div. 2000), aff'd, 167 N.J. 62

(2001).

 While we disagree with the motion judge's rationale, we agree

with Atlantic's alternative argument, that the CFA is inapplicable

to ambulance service providers under the "learned professional"

exception to the CFA.6

 The "learned professional" exception was first recognized by

the Supreme Court in Macedo v. Dello Russo, 178 N.J. 340 (2004).

In Macedo, the Court noted that the CFA had not changed in the

nearly forty years since its enactment. Id. at 344. The Court

analyzed the cases involving professional services during that

forty-year span, and concluded "our jurisprudence continues to

identify learned professionals as beyond the reach of the [CFA]

so long as they are operating in their professional capacities.

The Legislature is presumed to be aware of that judicial view."

6
 In light of this decision, we need not address the parties'
disputes concerning satisfaction of the requirements for class
certification on appellants' fraud claim.

 9 A-1622-16T2
Id. at 345-46. The Macedo Court held that advertisements by

learned professionals, specifically physicians:

 in respect of the rendering of professional
 services are insulated from the CFA but
 subject to comprehensive regulation by the
 relevant regulatory bodies and to any common-
 law remedies that otherwise may apply. We
 consider ourselves bound by that Legislative
 acquiescence. If we are incorrect in our
 assumption, we would expect the legislature
 to take action to amend the statute.

 [Id. at 346.]

 In the thirteen years since Macedo, the Legislature has not

amended the CFA to include learned professionals. Thus, our

jurisprudence continues to exempt professionals from the CFA. See

Manahawkin Convalescent v. O'Neill, 426 N.J. Super. 143, 155-56

(App. Div. 2012) (nursing homes insulated from CFA), aff'd, 217

N.J. 99 (2014);7 Plemmons v. Blue Chip Ins. Servs., Inc., 387 N.J.

Super. 551, 556 (App. Div. 2006) (insurance brokers, as semi-

professionals, insulated from CFA); Hampton Hosp. v. Bresan, 288

N.J. Super. 372, 383 (App. Div.) (hospitals insulated from CFA),

7
 The Supreme Court did not decide whether the nursing home's
conduct was exempt from the CFA under the "learned professional"
exception as the Court concluded the nursing home did not commit
an "unlawful practice" under the CFA. In dicta, the Court
expressed "doubt" whether the "billing and collection function at
issue in [the Manahawkin Convalescent] case would qualify for the
learned professional exception." Manahawkin Convalescent, supra,
217 N.J. at 124. However, the Manahawkin Convalescent case
addressed who was responsible for payment of the nursing home's
bill, not the reasonableness of the billing rates.

 10 A-1622-16T2
certif. denied, 144 N.J. 588 (1996); Vort v. Hollander, 257 N.J.

Super. 56, 62 (App. Div.) (attorneys insulated from CFA), certif.

denied, 130 N.J. 599 (1992). But see Suarez v. E. Int'l Coll.,

428 N.J. Super. 10, 39 (App. Div. 2012) (educational and vocational

training program governed by the CFA because the program was not

overseen by any regulatory body and there were no regulations

governing the school that would present "a patent and sharp"

conflict with the CFA), certif. denied, 213 N.J. 57 (2013).

 In Neveroski v. Blair, 141 N.J. Super. 365 (App. Div. 1976),8

we held that real estate brokers were not subject to the CFA

because:

 A real estate broker is in a far different
 category from the purveyors of products or
 services or other activities. He is in a semi-
 professional status subject to testing,
 licensing, regulations and penalties through
 other legislative provisions. Although not
 on the same plane as other professionals such
 as lawyers, physicians, dentists, accountants
 or engineers, the nature of his activity is
 recognized as something beyond the ordinary
 commercial seller of goods or services -- an
 activity beyond the pale of the act under
 consideration.

 Certainly no one would argue that a member of
 any of the learned professions is subject to
 the provisions of the Consumer Fraud Act

8
 In 1976, the Legislature amended the CFA to include real estate,
thereby abrogating the court's holding in Neveroski. See N.J.S.A.
56:8-2. The Neveroski decision remains instructive as it supports
the CFA's exclusion of learned professionals absent express
legislative authority.

 11 A-1622-16T2
 despite the fact that he renders "services"
 to the public. And although the literal
 language may be construed to include
 professional services, it would be ludicrous
 to construe the legislation with that broad a
 sweep in view of the fact that the nature of
 the services does not fall into the category
 of consumerism.

 Similarly, in the absence of clear and
 explicit language in the statute, a broker who
 negotiates the sale of real estate and thereby
 renders "services" is nevertheless outside the
 scope of persons sought to be covered by the
 Act.

 [Id. at 379-80 (citations omitted).]

 We review the relevant statutory and regulatory provisions

to determine whether ambulance service providers are learned

professionals exempt from consumer fraud claims. By statute, the

Department of Health (Department) is charged with overseeing the

provision of health care services to the public, and ensuring that

the services provided are "at a reasonable cost." N.J.S.A. 26:2H-

1. The definition of health care services specifically includes

ambulance services. N.J.S.A. 26:2H-2(b). The Department

regulates ambulance service providers in accordance with N.J.S.A.

26:2H-1 to -26 and N.J.S.A. 26:2K-7 to -20.

 Pursuant to its statutory authority, the Department

promulgated regulations governing "Mobility Assistance Vehicle and

Basic Life Support Ambulance Services," N.J.A.C. 8:40-1.1 to -7.4,

and "Advanced Life Support Services; Mobile Intensive Care

 12 A-1622-16T2
Programs, Specialty Care Transport Services and Air Medical

Services," N.J.A.C. 8:41-1.1 to -12.5. These regulations "define

the operational requirements" of non-volunteer mobility assistance

vehicles, basic life support ambulance services, mobile intensive

care programs and specialty care transport services in the State.

N.J.A.C. 8:40-1.2; N.J.A.C. 8:41-1.2. The Department's

regulations establish stringent licensure requirements for

ambulance service providers. N.J.A.C. 8:40-2.1 to -2.3; N.J.A.C.

8:41-2.1 to -2.3. Additionally, the Department has the right to

take enforcement action against ambulance service providers.

N.J.S.A. 26:2H-13; N.J.S.A. 26:2H-14; N.J.A.C. 8:40-7.2; N.J.A.C.

8:41-12.3.

 Whether labeled "professionals" or "semi-professionals," we

find that ambulance service providers are excluded from liability

under the CFA for services rendered consistent with their

professional license because they are regulated by the Department.

The undisputed goal of the CFA is to protect consumers. Hampton

Hosp., supra, 288 N.J. Super. at 378 (citing Martin v. Am.

Appliance, 174 N.J. Super. 382, 384 (App. Div. 1980)). In Hampton

Hospital, we noted that because hospitals are regulated by the

Department, there was "no purpose to a requirement that hospital

services be within the purview of the Consumer Fraud Act when

those same services fall within the purview of the Department of

 13 A-1622-16T2
Health." Id. at 383. Here, the Department adopted extensive

regulations governing ambulance services, and is authorized to

take measures against ambulance service providers for violation

of its regulations, including revocation of licensure. N.J.S.A.

26:2H-13; N.J.S.A. 26:2H-14; N.J.A.C. 8:40-7.2; N.J.A.C. 8:41-

12.3.

 Based upon the Department's rigorous regulation of ambulance

services, the learned professional exception to the CFA precludes

appellants' consumer fraud claim. To hold otherwise would present

a situation "with a real possibility of conflicting

determinations, rulings and regulations affecting the identical

subject matter." Daaleman v. Elizabethtown Gas Co., 77 N.J. 267,

272 (1978). Since we determine that ambulance service providers

are excepted from the CFA, denial of appellants' motion for class

certification on the consumer fraud claim was the correct result.

 Our determination that the CFA is inapplicable to Atlantic

does not completely dispose of this matter. Appellants also sought

class certification on their breach of contract claim against

Atlantic. There are two distinct breach of contract claims in

this case. One claim on behalf of the Cullum class is that

Atlantic charged unreasonable rates for ambulance services. 9 And

9
 In opposition to class certification on this breach of contract
claim, Atlantic argued it is necessary to bundle rates for

 14 A-1622-16T2
the other claim on behalf of the Hitti class is that Atlantic

improperly charged a $14 mileage fee.

 With respect to the breach of contract claim on behalf of the

Cullum class, we determine that denial of class certification was

proper, but for reasons other than those articulated by the motion

judge.

 The health care regulations and statutes enacted by the

State's Legislative and Executive branches establish that adequate

and affordable health care services are of utmost importance. In

passing the Health Care Facilities Planning Act, N.J.S.A. 26:2H-1

to -26 (Act), the Legislature proclaimed a strong public policy

to establish, promote and ensure adequate health care services in

this State. The Act explicitly declares that it is "the public

policy of this State that . . . related health care services of

the highest quality, of demonstrated need, efficiently provided

and properly utilized at a reasonable cost are of vital concern

to the public health." N.J.S.A. 26:2H-1.

ambulance services, to cover the cost of providing trained and
licensed professionals, in fully equipped specialty vehicles, to
respond to medical emergencies. The uniform rates charged by
Atlantic for ambulance services also contemplate charity care
subsidies and other financial considerations required to render
ambulance services to patients who lack health care coverage or
cannot afford health care services. See N.J.A.C. 8:33-4.10.

 15 A-1622-16T2
 The Act further requires the Department to establish a State

Health Planning Board (SHPB). N.J.S.A. 26:2H-5.7. The SHPB

reviews applications for certificates of need and makes

recommendations to the Department's Commissioner regarding the

issuance of those certificates.10 N.J.S.A. 26:2H-5.8(b). Under

the Act, "no new health care service shall be instituted . . .

except on application for and receipt of a certificate of need

. . . ." N.J.S.A. 26:2H-7.11 To obtain a certificate of need, the

Act provides:

 No certificate of need shall be issued unless
 the action proposed in the application for
 such certificate is necessary to provide
 required health care in the area to be served,
 can be economically accomplished and
 maintained, will not have an adverse economic
 or financial impact on the delivery of health
 care services in the region or Statewide, and
 will contribute to the orderly development of
 adequate and effective health care services.

 [N.J.S.A. 26:2H-8.]

10
 "'Certificate of need' means the formal written approval of the
New Jersey Department of Health and Human Services to construct
or expand a health care facility or to institute a new health care
service, in accordance with the requirements set forth at N.J.A.C.
8:33." N.J.A.C. 8:41-1.3.
11
 As used in this section of the Act, the term "health care
service" includes "any service which is the subject of a health
planning regulation adopted by the Department . . . ." N.J.S.A.
26:2H-7.

 16 A-1622-16T2
 The Department issued a certificate of need to Atlantic to

provide ambulance services. Prior to issuing a certificate of

need, the Department and SHPB were required to consider whether

the Atlantic's services could "be financially accomplished and

licensed in accordance with applicable licensure regulations,"

would "not have an adverse impact on access to health care services

in the region or State-wide," and would "contribute to the orderly

development of adequate and effective health care services."

N.J.A.C. 8:33-4.9. If Atlantic did not meet the statutory and

regulatory requirements for issuance of a certificate of need, the

Department would have denied the application.

 From our review of the statutes and regulations governing

health care in this State, we discern an unequivocal legislative

policy to ensure adequate and effective health care services for

all residents. The regulations governing certificates of need

take into consideration many factors including, specifically,

financial impacts and concerns. N.J.A.C. 8:33-4.9 and -4.10.

Applicants seeking a certificate of need for health care services

are required to provide services to persons who are financially

"unable to obtain care." N.J.A.C. 8:33-4.10.12

12
 Atlantic accepts discounted payment for ambulance services
depending upon the situation. For example, Atlantic reduces its
fee by as much as forty percent for services provided to uninsured
patients. Atlantic also has arrangements with third-party

 17 A-1622-16T2
 Keeping in mind New Jersey's strong policies governing health

care services, we consider the breach of contract claim on behalf

of the Cullum class. Health care costs are a significant issue

in the United States. Providing affordable health care services

is a policy issue to be addressed by the Legislature and the

Executive Branch agencies to which it has delegated the authority

to carry out its policies. See DiCarlo v. St. Mary's Hosp., 530

F.3d 255, 259 (3d Cir. 2008).13

 We find persuasive the decision of the Third Circuit Court

of Appeals, which affirmed a trial court decision dismissing

billing claims against a hospital:

 In the District Court, DiCarlo's primary
 argument was that the practice of charging
 uninsured patients significantly higher rates
 than insured patients and patients covered
 under Medicare, Medicaid, or the New Jersey
 Charity Care Program, for the same services
 and supplies, is wrongful and discriminatory.
 The District Court granted the defendants'
 motion for judgment on the pleadings and
 dismissed DiCarlo's complaint with prejudice.

insurance companies to accept less than the billed amount for its
ambulance services.
13
 Appellants contend that Atlantic is precluded from arguing
courts cannot determine reasonable rates for health care services
because no cross-appeal was filed. We disagree. Rule 2:3-4
requires the filing of a cross-appeal where "respondent seeks to
expand the substantive relief granted in the order, and not just
provide further support for sustaining the order." Pressler &
Verniero, Current N.J. Court Rules, comment 2 on R. 2:3-4 (2017).
See State v. Eldakroury, 439 N.J. Super. 304, 307 n. 2 (App. Div.),
certif. denied, 222 N.J. 16 (2015).

 18 A-1622-16T2
 The District Court discussed the policy
 concerns about the rising cost of healthcare
 at length and found that the courts are ill-
 equipped to determine what reasonable hospital
 costs are, or to make a policy determination
 on behalf of the legislative branch.

 [DiCarlo v. St. Mary's Hosp., supra, 530 F.3d
 at 259.]

 Thus, we agree that denial of class certification for the

breach of contract claim on behalf of the Cullum class, challenging

the reasonableness of fees charged by Atlantic, was proper.

 We next review denial of class certification for the breach

of contract claim on behalf of the Hitti class. Individuals

requiring ambulance services do not "contract" with Atlantic. Nor

can they negotiate with Atlantic regarding its services. The

relationship between Atlantic and its patients is based upon

implied contract or quasi-contract. See Wanaque Bor. Sewerage

Auth. v. Twp. of West Milford, 144 N.J. 564, 574 (1996) (contracts

implied-in-fact for services are inferred from the parties'

conduct or from the surrounding circumstances).

 Turning to the quasi-contract claim, patients not brought to

a hospital, identified as the Hitti class, were charged for one

mile of travel. Atlantic now admits that patients in the Hitti

class were not transported to a hospital and, therefore, the $14

fee was improper. However, Atlantic did not refund or credit the

$14 amount to those individuals. Consideration of the refund

 19 A-1622-16T2
issue for the Hitti class would not violate the policy concerns

associated with the Cullum class because it is limited to a charge

Atlantic admits was billed in error and does not implicate

Atlantic's rate-setting decisions for ambulance services.

 Because the judge did not consider whether the Hitti class

could pursue class certification to recoup Atlantic's improperly

charged $14 mileage fee under a breach of quasi-contract theory,

we remand that issue to the trial court. The judge should

determine whether the breach of quasi-contract claim against

Atlantic, limited to recovery of the $14 mileage fee, is suitable

for class certification.

 In sum, we affirm denial of class certification on appellants'

Consumer Fraud Act claim. We also affirm denial of class

certification on the breach of contract claim as to the Cullum

class. We remand the matter to the trial court to review class

certification on the breach of quasi-contract claim as to the

Hitti class.

 Affirmed in part and remanded in part. We do not retain

jurisdiction.

 20 A-1622-16T2